Abe McFARLAND, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–93–00536–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 9, 1995.

Rehearing Overruled June 22, 1995.

Pamela S. Derbyshire, Houston, for appellant.

John B. Holmes, Jr., Mary Lou Keel, Tammy Thomas, Houston, for appellee.

Before HEDGES and O'CONNOR, JJ., and DUGGAN,[1] Justice (Retired).

## OPINION

HEDGES, Justice.

A jury convicted appellant, Abe McFarland, of aggravated robbery, found one enhancement paragraph true, and sentenced him to 75–years confinement. In five points of error, appellant complains that comments by the prosecutor in the presence of the jury denied him a fair and impartial trial; that his trial counsel was ineffective; and that the evidence was legally and factually insufficient to support his conviction. We reverse and remand for a new trial.

### Denial of Fair and Impartial Trial

In his first point of error, appellant claims that the prosecutor denied him a fair and impartial trial by twice issuing a "challenge" to him, in the presence of the jury, to request a continuance so that DNA testing could be conducted to prove his innocence. Appellant argues that the challenge violated both his right not to be compelled to testify against himself under U.S. Const. amends. V and XIV and his fifth amendment right to silence; and that it effectively shifted the burden of proof to him to show his innocence. Appellant maintains that the error was compounded when the prosecutor argued in closing to the jury that the defense attorney did not want them to know the DNA final result.

After the jury had been excused on the first day of testimony, the prosecutor announced to the court:

It has come to our attention that there is semen over at the crime lab at H.P.D. in an amount sufficient to get a D.N.A. test result, and we ask the defense attorney if

1. Justice Duggan, who retired on December 31, 1994, continues to sit by assignment for the disposition of this case, which was submitted prior to that date.

his client would be willing to consent to a voluntary blood sample. It is my understanding that he will not. And I hereby give [the defense attorney] notice that we intend to draw a warrant and get the blood from the defendant pursuant to the warrant and intend to offer in our case in chief next week evidence, if we get a positive result, or if we get a comparison result, and *we don't oppose any motion for continuance if there is one.*

The defense attorney responded:

I don't know whether we'll move for continuance at the time or not. It depends on the outcome of the test, whether you seek to introduce the test into evidence. At that time we'll make the determination as to whether we'll move for continuance.

The following week, in rebuttal after appellant had rested, the State called James Bolding, the supervisor of criminalistics at the Houston Police Department (HPD) crime lab. Bolding testified that he had compared the blood taken from appellant and the semen samples taken from the complainant. He concluded:

Well, again, I would say that we at this point in time have no concrete evidence that he [the appellant] did not [put that semen in the complainant].

Bolding stated that the test result was inconclusive and that a DNA test was the only effective mode of tying the semen specimen to appellant. He explained that a DNA analysis would take a minimum of four weeks to complete.

The following exchange then occurred:

Prosecutor: *Your Honor, the State of Texas certainly is not going to oppose any motion by the defense attorney here to move for a continuance.*

The court: Well, are you passing the witness?

Prosecutor: Yes, sir.

Defense counsel: Your Honor, the defendant has no motion.

The court: [Defense counsel], you may proceed.

(Emphasis added.)

On cross-examination, Bolding testified that the analysis of the vaginal swabs showed only type A secreter activity; that appellant was a type O secreter based on an analysis of his blood; and that the complainant was a type A secreter. Bolding could not say, based on his tests to date, whether the person to whom the semen belonged was a secreter or a nonsecreter. If he were a secreter, then it would be possible to determine the blood type of the donor from the semen.

After Bolding's redirect examination, the following occurred:

Prosecutor: *Your Honor, again the State will offer to not oppose any motion by the defense to find out the bottom line on this question.*

Defense counsel: Your Honor, if the State is moving for a continuance at this point, we need to discuss that before the bench.

Prosecutor: Judge, we've got enough evidence here—

Defense counsel: If she's passing the witness [Bolding], I do have some more questions.

The court: Proceed.

(Emphasis added.) The italicized language constitutes what appellant characterizes as challenges.

A motion for continuance was first discussed among the prosecutor, the defense attorney, and the trial judge outside the presence of the jury early in the trial. The prosecutor put the court and appellant on notice that she would seek a search warrant for appellant's blood sample and that she intended to have a DNA test run. Nothing in the record suggests that she was aware that a DNA test could not be completed in less than four weeks.

The first suggestion for a continuance came at the end of the rebuttal direct examination, occurring well after Bolding testified that four weeks would be required to run a DNA test. The State did not emphasize any link between a continuance and the need for a DNA test to conclusively link appellant to

the semen sample. The defense responded, "no motion." Both the trial court and the defense passed over the prosecutor's suggestion without discussion.

The defense then proceeded to rebuttal cross-examination. During cross-examination, defense counsel elicited testimony that left the inference that if appellant were a nonsecreter, the DNA tests would not be conclusive.

The second continuance suggestion came at the end of rebuttal redirect examination. The defense responded by asking if the State was requesting a continuance. To which the State responded: "Judge, we've got enough evidence here—". The clear inference was that the State did not need and was not relying on any DNA testing to prove its case. Defense counsel then stated that if the State had passed the witness, he had some more questions, and the court directed him to proceed. On rebuttal re-cross:

Defense Counsel: Isn't that true [that everything so far that you have indicates that without a question it is not Mr. McFarland]? Evidence so far indicates that it is not?

Bolding: I have no evidence that it shows that this is the correct individual.

Q: Okay. The DNA test that you have discussed takes approximately four weeks to complete?

A: Yes, sir.

Q: Do you know when this case was originally set for trial?

A: No, sir, I do not.

Q: You know how many times this case has been set for trial?

A: No, sir, I do not.

The inference was that the State had failed to obtain or avoided obtaining DNA testing.

At jury summation, the prosecutor spoke briefly and then reserved the rest of her time. The defense counsel presented his jury argument and concluded with the following:

The most telling testimony came this morning, as you know. The most telling testimony came in the form of the testimony from Officer Hubly and Officer Bolding.

You know from what the assistant district attorney told you that they started the scientific test in this case last Friday. This case has been pending, as you know, from the date of his arrest back in September. They chose to, on Friday, for whatever reason, try to positively identify this defendant through scientific testing, and they asked H.P.D. crime lab to assist them in that regard.... The most telling evidence in this case came from the State's own witness when he told you, in answer to my question—and I quote—The evidence we have so far indicates it is not this defendant.

The prosecutor then made the following statements:

Prosecutor: Say one more thing to you about the DNA evidence. That is another piece of evidence that I drew a warrant and I got some blood to show you as much as I could. **Defense attorney here certainly does not want you to know the DNA final result.** He did not.

Defense Counsel: Your Honor, I'm going to object. Outside the record. That's nonsense.

The Court: Sustained.

.       .       .       .       .

Prosecutor: The defense attorney stood up here and postulated to you that, well, the man said, the last time he said it he said it the way the defense attorney wanted it said. I can't say it's him. **And he doesn't ask the court—and this is on the record and you can consider it—he didn't even ask for the court's consideration on a motion for continuance to have time to get the results.**

.       .       .       .       .

Defense Counsel: I object. Outside the record. I'm not required to make a motion for continuance so the State can put together a case. If the State wants to move for continuance, let them move for continuance.

The Court: Overruled. Please proceed.

Prosecutor: **You can consider every bit of that. Why would it hurt Abe McFarland for you to see the bottom line? I**

**have nothing to hide.** Again, if we didn't get the results in time, by all means, I'm taking the hit on that one, and I don't want to dodge blame if it's mine. I'll take that responsibility, but please don't hold that against [the complainant]. She doesn't deserve that. And we have enough evidence, we have abundant evidence here, more that is necessary beyond a reasonable doubt for you to base a verdict of guilty on. **Don't reward him because they laid low until the end of trial and got lucky enough for us not to have a DNA result. It's obvious to everyone in this courtroom that he really doesn't want to see it.**

Defense Counsel: Your Honor, again, I'm going to object. Outside the record.

The Court: Sustained.

(Emphasis added.)

■ We need not consider appellant's complaint that the prosecutor's comments before the jury during Bolding's testimony denied him his constitutional right to remain silent or that the comments illegally shifted the burden of proof to him. Appellant waived any error in that these statements about continuance before the jury denied him his constitutional right to remain silent or that they illegally shifted the burden of proof to him. Appellant waived any error in these statements about continuance during Bolding's testimony by failing to make a contemporaneous objection.

■ However, the prosecutor did commit reversible error during her final argument when she argued that because appellant did not want the jury to know the results of the DNA testing, his counsel refused to ask for a continuance. Appellant contends that this jury argument merely enhances the earlier harm. We believe that just the opposite is true, that the error lies in the jury argument alone. The prosecutor's earlier statements were merely the material for the later improper arguments.

Jury argument is permissible if it falls within one of the following categories: (1) summation of the evidence; (2) reasonable deduction drawn from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Albiar v. State,* 739 S.W.2d 360, 362 (Tex.Crim.App. 1987); *Morris v. State,* 755 S.W.2d 505, 509 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

The prosecutor's argument falls outside the permissible ambit of argument. It cannot be a summation of evidence or reasonable deductions drawn from it because the prosecutor's statements about continuance to obtain DNA test results were not evidence. Nor do we believe that the prosecutor's argument represents a legitimate response to the defense counsel's argument. While the defense counsel argued that the State tried unsuccessfully to establish identification through blood typing, he never mentioned DNA testing.

Appellant was harmed by the prosecutor's argument because it unfairly suggested that appellant had reason to fear DNA test results when there was no evidence that such testing had even been considered, let alone executed. The State made it appear that appellant was hiding existing evidence— when in fact that evidence did not exist. We recognize that it is the State's task to rebut the presumption of innocence, but we cannot condone unfair tactics to accomplish this goal.

We sustain point of error one.

Because our ruling on point of error one is dispositive, we decline to rule on appellant's other points of error.

We reverse the judgment of the trial court and remand the case.