Abe McFARLAND, Appellant,

v.

The STATE of Texas.

No. 1093–98.

Court of Criminal Appeals of Texas, En Banc.

March 24, 1999.

Pamela S. Derbyshire, Houston, for appellant.

Carol M. Cameron, Assistant DA, Houston, Matthew Paul, State's Atty., Austin, for the State.

*OPINION*

McCORMICK, P.J., delivered the opinion of the Court, in which MANSFIELD, KELLER, PRICE, WOMACK and KEASLER, JJ., joined.

A jury convicted appellant of aggravated robbery. Appellant entered a plea of true to the enhancement paragraph. The jury found the enhancement allegation true and assessed punishment at confinement in the

Texas Department of Criminal Justice, Institutional Division, for seventy-five years.

In his brief on direct appeal, appellant raised five points of error. The Houston Court of Appeals, First District, decided appellant waived the contention presented in his first point of error but it nevertheless reversed the judgment of the trial court and remanded the case for a new trial based on unassigned error relating to the prosecution's jury arguments.[1] *McFarland v. State*, 902 S.W.2d 540 (Tex.App.-Houston [1 st Dist.] 1995). This Court granted the State's petition for discretionary review, and remanded the case to the Court of Appeals to address appellant's challenge to the sufficiency of the evidence. We dismissed the State's other grounds for review without prejudice. *McFarland v. State*, 930 S.W.2d 99 (Tex.Cr. App.1996).

On remand, the Court of Appeals rejected appellant's sufficiency challenge and again reversed based on the prosecution's jury argument. *McFarland v. State*, No. 01–93–0536–CR, 1998 WL 255174 (Tex.App–Houston [1 st Dist.] delivered May 21, 1998). We granted the State's petition for discretionary review on three grounds.

■ We will address the grounds for review in the same order as presented by the State in its petition. We begin with the first ground for review and agree with the State that the Court of Appeals, in its original opinion, failed to conduct a proper preservation of error analysis with respect to the arguments made by the prosecution during closing. The State called as a rebuttal witness James Bolding, the supervisor of criminalistics at the Houston Police Department crime lab. Officer Bolding testified that he compared blood taken from appellant and semen samples taken from the complainant but the results were inconclusive. Bolding then concluded that a DNA test was the best scientific method of determining whether the semen sample linked appellant to this crime. However, he explained that a DNA analysis would take a minimum of four weeks to complete. The State then announced that it would not oppose a motion by the defense for a continuance. Appellant responded that he had no motion. At the end of rebuttal redirect examination, the State made another suggestion that appellant move for a continuance to await the DNA test results. Appellant responded by stating that if the State was moving for a continuance, then the matter needed to be discussed before the bench.

During closing argument, appellant criticized the prosecution for waiting too long to "try to positively identify appellant through scientific testing." Appellant also argued Bolding's testimony "so far indicates" appellant was not the perpetrator.

*"Defense Counsel:* The most telling testimony came this morning, as you know. The most telling testimony came in the form of the testimony from Officer Hubly and Officer Bolding. *You know from what the assistant district attorney told you that they started the scientific test in this case last Friday. This case has been pending, as you know, from the date of his arrest back in September. They chose to, on Friday, for whatever reason, try to positively identify this defendant through scientific testing,* and they asked H.P.D. crime lab to assist them in that regard. You know what they told you this morning. I want to briefly remind you of this testimony because it is so essential and so crucial. You know from what Officer Bolding told you that there are two types of individuals and only two types. There is the secreter and non-secreters. With a secreter, what they're seeking to do is match up the blood type with the seminal fluid in this case that they had located and recorded and saved through the vaginal swab on Delice Hannon on that night. What he told you was that they were unable to match up the defendant in this case, who is type O, with what they found on the vaginal swab that night, which type A. The most telling evidence in this case came from the State's own witness when he told you, in answer to my question— and I quote—The evidence we have so far

---

1. None of appellant's points of error in the Court of Appeals complained of improper jury arguments.

indicates it is not this defendant. I ask that you consider that evidence with all the gravity and magnitude that that evidence deserves." (Emphasis added).

The State responded with the following:

*"Prosecutor:* Say one more thing to you about the DNA evidence. That is another piece of evidence that I drew a warrant and I got some blood to show you as much as I could. *Defense attorney here certainly does not want you to know the DNA final result.* He did not.

*"Defense Counsel:* Your Honor, I'm going to object. Outside the record. That's nonsense.

*"The Court:* Sustained.

*"Prosecutor:* The defense attorney stood up here and postulated to you that, well, the man said, the last time he said it he said it the way the defense attorney wanted it said. I can't say it's him. *And he doesn't ask the court-and this is on the record and you can consider it–he didn't even ask for the court's consideration on a motion for continuance to have time to get the results.*

*"Defense Counsel:* I object. Outside the record. I'm not required to make a motion for continuance so the State can put together a case. If the State wants to move for continuance, let them move for continuance.

*"The Court:* Overruled. Please proceed.

*"Prosecutor: You can consider every bit of that. Why would it hurt Abe McFarland for you to see the bottom line? I have nothing to hide.* Again, if we didn't get the results in time, by all means, I'm taking the hit on that one, and I don't want to dodge blame if it's mine. I'll take that responsibility, but please don't hold that against [the complainant]. She doesn't deserve that. And we have enough evidence, we have abundant evidence here, more than is necessary beyond a reasonable doubt for you to base a verdict of guilty on. *Don't reward him because they laid low until the end of trial and got lucky enough for us not to have a DNA result. It's obvious to everyone in this courtroom that he really doesn't want to see it.*

*"Defense Counsel:* Your Honor, again, I'm going to object. Outside the record.

*"The Court:* Sustained." (Emphasis added).

In this case, after the trial judge sustained the objections to the first, third, and fourth emphasized arguments made by the prosecution, appellant did not ask for an instruction to disregard or move for a mistrial. This Court has held that before a defendant will be permitted to complain on appeal about an erroneous jury argument, he will have to show he objected and pursued his objection to an adverse ruling. *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Cr.App.1996). Since the record reflects that appellant did not pursue his objections to the first, third, and fourth emphasized arguments to an adverse ruling, appellant failed to preserve any error as to these arguments.

 The next issue we address is whether the Court of Appeals erred in failing to hold that the prosecutor's second emphasized argument fell within the bounds of permissible jury argument. To be proper, jury argument must encompass summation of evidence presented at trial, reasonable deductions drawn from evidence, answers to opposing counsel's argument, or plea for law enforcement. *Lagrone v. State,* 942 S.W.2d 602 (Tex.Cr.App.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997); *Nethery v. State,* 692 S.W.2d 686 (Tex.Cr. App.1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986).

In this case, a reasonable inference from appellant's jury argument is that the prosecution did not want the jury to know the results of any DNA test since the prosecution waited so long to request such a test. The prosecution during its closing argument simply responded to this argument by pointing out the defense also did not want the jury to know the results of any DNA test. We find that the prosecution's statement qualifies as a permissible answer to argument of opposing counsel. *Nethery* 692 S.W.2d at 703.

The Court of Appeals decided the prosecution's argument was not a legitimate response to appellant's argument because appellant's argument never mentioned "DNA

testing." See *McFarland*, 902 S.W.2d at 543. On this record, appellant's argument referring to "scientific testing" was a reference to "DNA testing." On this record, everyone knew the reference to "scientific testing" was a reference to "DNA testing."

Based on the foregoing we sustain grounds for review one and two, making it unnecessary to address ground for review three. We reverse the judgment of the Court of Appeals and remand to the Court of Appeals to address appellant's remaining points of error.

HOLLAND and JOHNSON, JJ., files dissenting opinions.

MEYERS, J., not participating.

HOLLAND, Justice, dissenting.

I disagree with the majority that the prosecutor's jury argument did not amount to error. Rather than affirm the judgment of the Court of Appeals, however, I would remand this cause for a proper harm analysis. TEX.R.APP. P. 44.2. The Court of Appeals determined "appellant was harmed by the prosecutor's argument because it unfairly suggested that appellant had reason to fear DNA test results when there was no evidence that such testing had even been considered, let alone executed." *McFarland v. State*, 902 S.W.2d 540, 543 (Tex.App.—Houston [1st Dist.] 1995, pet. granted). Though this reasoning reflects why the Court of Appeals determined the jury argument constituted error, it fails to address the impact of the error on the jury's verdict and whether it amounted to harmful error. I would remand for the Court of Appeals to address whether the error was harmful.

JOHNSON, Justice, dissenting to the opinion of the Court.

As described in the majority opinion, the prosecutor had not completed preparation of her case before beginning trial. The following time-line indicates the pertinent events and illustrates the abundance of preparation time available to, yet unused by, the state.[1]

Sep. 6, 1992 Alleged offense occurred. Tr. at 5.

Oct. 9, 1992 Felony indictment filed.

Nov. 5, 1992 Agreed setting for jury trial set for 3/22/93. Tr. at 13.

Mar. 22, 1993 Agreed setting for jury trial set for 6/14/93.[2] The setting notes, "State not ready for trial on 3/22/93." Tr. at 16.

Apr. 6, 1993 Agreed setting for jury trial set for 5/17/93. Tr. at 17.

May 17, 1993 Agreed setting for jury trial set for 6/1/93. Tr. at 18.

May 26, 1993 Motion for Discovery, Production and Inspection of Evidence filed by defense. Number thirteen states, "The results of any scientific tests. The Defendant would further show that he has no means of ascertaining the existence of this evidence and the possibility of expert testimony without the disclosure herein sought and without it his counsel will be unable to effectively confront and cross examine the witnesses against him." Tr. at 20.

Jun. 2, 1993(Wed) The state dismissed counts one and two, both aggravated sexual assault charges, and proceeded with count three, aggravated robbery. S.F. vol. III, at 15–16.

Jun. 2, 1993(Wed) Jury panel was summoned. The jury was impaneled at 6:00 p.m.

Jun. 3, 1993(Th) In a pretrial discussion in front of the trial court, the prosecutor and defense attorney were "agreed" as to discovery motion number thirteen. S.F. vol. III, at 9.

11:40 a.m.; Jury was sworn. State and defense made opening statements.

12:00 p.m.; Testimony began.

After the jury was recessed until Monday, June 7, the prosecutor stated, in the presence of appellant, "It has come to our attention that there is semen over at the crime lab at H.P.D. in an amount

---

1. Unless otherwise noted, all entries on the time-line are found on the Docket Sheet, Tr. 49–54.

2. Although the transcript indicates that the agreed setting was for 6/14/93, the agreed setting notices that followed indicate that the date should have been written as 4/6/93.

sufficient to get a DNA test result . . ." S.F. vol. IV, at 257.

Jun. 4, 1993(Fri) Approx. 1:40 p.m.; Blood drawn from appellant. State began DNA testing. S.F. vol. VI, at 465–66.

Jun. 7, 1993(Mon) 11:30 a.m.; Testimony resumed, with the state continuing its case-in-chief.

The state rested.

Defense testimony began.

5:10 p.m.; Court recessed for the day.

Jun. 8, 1993(Tue) The first daily entry in the transcript is "State made motion for continuance. Court denied motion."

11:45 a.m.; Defense testimony resumed.

11:55 a.m.; Defense rested.

11:56 a.m.; State began its rebuttal testimony.

State introduced the possibility of DNA evidence through Officer Bolding. S.F. vol. VI, at 476–77.

During direct examination of Bolding, the prosecutor stated, "Your Honor, the State of Texas certainly is not going to oppose any motion by the defense attorney here to move for a continuance." S.F. vol. VI, at 479.

During redirect examination of Bolding, the prosecutor stated, "Your Honor, again the State will offer to not oppose any motion by the defense to find out the bottom line on this question." S.F. vol. VI, at 486.

At the conclusion of Bolding's testimony, the prosecutor stated, "Your Honor, at this time the State of Texas rests unless there is a motion." S.F. vol. VI, at 490.

Defense stated there was no motion. Defense rested. *Id.*

12:30 p.m.; Court recessed for lunch.

2:00 p.m.; Court resumed and the charge was presented to the jury.

2:56 p.m.; Jury retired for deliberations.

As noted above, the alleged offense occurred on September 6, 1992, and appellant was indicted on October 9, 1992. Although trial commenced on June 3, 1993, almost eight months after indictment, the state did not even *begin* DNA testing until Friday, June 4, 1993, *after* trial began, and did not mention the possibility of DNA evidence to the jury until rebuttal on Tuesday, June 8. Appellant appears to have been unaware of the possibility of DNA testing until the prosecutor revealed it on Thursday, June 3, after conclusion of the first day of testimony.[3] After obtaining a search warrant, Officer Hubly of the Houston Police Department drew blood from appellant on Friday, June 4. On Tuesday, June 8, the state called Officer Bolding as a rebuttal witness. He testified that he had compared blood taken from appellant and semen samples taken from the complainant.[4] The results were inconclusive. As noted by the majority, "Bolding concluded that a DNA test was the best scientific method of determining whether the semen sample linked appellant to the crime. However, he explained that a DNA analysis would take a minimum of four weeks to complete." *Ante,* at 750.

It should be noted that the trial had been reset three times, and at least one reset was granted because the state was not ready for trial. During the defense case-in-chief and after the state began its DNA testing, the prosecutor moved for a continuance. The trial court denied the motion. Testimony resumed, and the defense rested ten minutes later. During the state's rebuttal, in front of the jury and after just having been denied her own continuance, the prosecutor tried to force defense counsel into requesting a continuance. Defense counsel resisted. After the prosecutor tried a second time to force defense counsel into requesting a continuance, defense counsel properly requested

3. After the first day of testimony and outside the presence of the jury, the prosecutor declared, "[i]t has come to our attention that there is semen over at the crime lab at H.P.D. in an amount sufficient to get a DNA test result, and we ask the defense attorney if his client would be willing to consent to a voluntary blood sample."

4. The test performed was a "secreter status test," also referred to as a "body fluids comparison test."

that, if the state wished to request a continuance, it be discussed before the bench and not in front of the jury. But the state did not stop there. At the conclusion of Bolding's rebuttal testimony, the prosecutor for the third time prodded the defense to request a continuance, stating that the state "rests unless there is a motion." The defense stated there was no motion and also rested.

In addition to the blatant and repeated attempts to force the defense to make up for her failure to prepare, during final argument. the prosecutor turned the burden of proof on its head. Her argument to the jury portrayed the defense as attempting to hide the results of the DNA testing, and painted herself as having nothing to hide. While almost admitting some responsibility for the problem,[5] in the next breath she shifted blame back to appellant and faulted him for failing to challenge the rebuttal case before it was presented, saying, "Don't reward him because they laid low until the end of the trial and got lucky enough for us not to have a DNA result." *Ante*, at 751. Luck had nothing to do with her lack of preparation.

Unfortunately, for the most part defense counsel did not preserve error. No objection was lodged to the repeated attempts to force the defense into requesting a continuance after the state had been denied its own continuance earlier the same morning. Three of four objections to the jury argument were sustained, but counsel did not ask for an instruction to disregard or move for mistrial; counsel did not pursue the objection to an adverse ruling and so did not preserve error.

The remaining objection was overruled, thus error was preserved. *Ante*, at 751. However, the majority finds that "the prosecutor's statement qualifies as a permissible answer to argument of opposing counsel." *Ante*, at 751. This is analogous to picking a fight, then complaining when the victim defends himself. If the state had properly prepared before trial, the defense counsel could not have made the argument that the

state now uses to justify its own excesses. The state opened the door, kicked appellant through it, and now complains that appellant has gone where he should not be. I do not wish to condone such misconduct.

I respectfully dissent. I would affirm the judgment of the court of appeals.

---

5. "Again, *if* we didn't get the results in time, by all means, I'm taking the hit on that one...."

*Ante*, at 751 (emphasis added).