In the Interest of CMMD and CFJ Children















IN THE
TENTH COURT OF APPEALS
 

No. 10-03-063-CV

IN THE INTEREST OF C.M.M.D. AND C.F.J., CHILDREN

 

From the 18th District Court
Johnson County, Texas
Trial Court # D200105555
                                                                                                                
                                                                                                         
MEMORANDUM OPINION
                                                                                                                

      The trial court signed a decree terminating Loretta Meserve’s parental rights on October 30,
2002. Meserve filed a notice of appeal on January 3, 2003.
      By statute, this is an accelerated appeal. Tex. Fam. Code. Ann. §§ 109.002(a), 263.405(a)
(Vernon 2002). Therefore, Meserve’s notice of appeal was due twenty days after the court signed
the decree. Tex. R. App. P. 26.1(b). Thus, her notice of appeal was due on November 19, 2002. 
Her January 3, 2003 notice of appeal is forty-five days late.
      We notified the parties by letter dated February 19, 2003 that this appeal may be dismissed
for want of jurisdiction because of the untimely notice of appeal, unless a response was filed
within ten days thereafter showing grounds for continuing the appeal. Id. 42.3(a). No response
has been filed.
      Because Meserve’s notice of appeal is untimely, we lack jurisdiction over this appeal. Raley
v. Lile, 861 S.W.2d 102, 105-06 (Tex. App.—Waco 1993, writ denied) (untimely appeal bond). 
Accordingly, we dismiss the appeal for want of jurisdiction.
 
                                                                   PER CURIAM
Before Chief Justice Davis, 
      Justice Vance, and
      Justice Gray
Dismissed for want of jurisdiction
Opinion delivered and filed March 26, 2003
[CV06]



#160;                                           

O P I N I O N
                                                                                                               

      A jury convicted Appellant Loyce Carlton Means of possession of cocaine with intent to
deliver and delivery of cocaine and assessed punishment at forty years’ confinement in the Texas
Department of Criminal Justice-Institutional Division. See Tex. Health & Safety Code Ann.
§ 481.112(f) (Vernon 1998).
      Means complains on appeal that: (1) the evidence is insufficient to support his conviction;
(2) the trial court erred when it overruled his motion to suppress evidence; and (3) the trial court
erred when it overruled his objection to the State’s improper jury arguments.
      We affirm the conviction.
FACTUAL AND PROCEDURAL BACKGROUND
      On December 2, 1996, undercover officer O.J. Latin and an informant went to Means’
residence in an attempt to purchase three kilos of cocaine. When Latin and the informant arrived
at Means’ residence there was a white “City of Houston” truck parked in the driveway. The
informant introduced Latin as his uncle in order not to arouse Means’ suspicion that Latin might
be a police officer. Means then invited Latin and the informant inside.
      Shortly thereafter, a man wearing dark blue “City of Houston” work pants and a white t-shirt
entered the residence while carrying a rectangular-shaped bundle wrapped in a dark blue “City of
Houston” work shirt. Means and the man went into an adjacent room while Latin and the
informant remained in the front of the house. From his position in the front room, Latin witnessed
Means and the man counting several stacks of money. After approximately two to three minutes,
Means closed the door. The informant then called out and told Means that he needed to leave
because he had to pick up some kids from school. The informant left and did not return to the
residence. 
      After approximately fifteen minutes, Means and the other man emerged from the room. The
other man left and Means summoned Latin inside the room. Once inside the room, Latin noticed
an open black briefcase that was filled with money. Latin and Means discussed how many kilos
of cocaine Latin wanted to purchase and the price per kilo. Because Latin did not have money for
the cocaine with him, Means and Latin agreed that Latin would get the money and return to the
residence. 
      Latin left the residence and met with a fellow officer who had the purchase money. The
officer and Latin discussed the specifics of the impending deal and Latin told the officer that he
did not plan to go back inside the residence but planned to conduct the deal outside. Latin then
placed the rubberband-wrapped bundles of money into a duffel bag and returned to the residence. 
Latin exited his car and saw Means standing in the driveway of his next-door neighbor’s house. 
Latin left the money in his car and walked over to Means. Means told Latin to get inside a
Suburban, which was parked on his next-door neighbor’s driveway. Latin entered the Suburban
and sat in the back seat, directly behind the driver’s seat while Means sat in the driver’s seat. 
      Once inside the Suburban, Means told Latin to get the money and to bring it back. It was at
this time that Latin observed another man, later identified as Patrick Jones, approach the
residence. Latin asked Means who the man was and Means replied that “he [was] cool.” Latin
then went to retrieve the money and once again sat in the Suburban. Latin waited in the car for
a few minutes while Means spoke with Jones. Means told Jones to drive around and check out
the area and make sure that there were not any police nearby. Jones did so and then returned
approximately five minutes later. 
      While Jones canvassed the area for police, Means remained outside the car, talking with
another suspect, Terry Wiseman. Once Jones returned and spoke with Means, Means entered the
Suburban where he again sat in the driver’s seat. Means asked Latin about the money and Latin
showed him the duffel bag and then handed him the money. Latin asked Means where the cocaine
was located. Means, pointing to a trash bag underneath a tree in his yard, told Latin that it was
there. Latin walked over to the trash bag and saw what appeared to be three kilos of cocaine. 
Latin then placed the three kilos in his duffel bag and returned and got back into the Suburban. 
Latin then tried to open the kilos in order to test the cocaine’s purity. Means told Latin that he
had a knife that Latin could use to open the packages. Latin and Means exited the Suburban and
walked towards Means’ residence. Means told Latin to go back and shut the Suburban’s doors
and as Latin was doing so, a blue and white police cruiser and the undercover surveillance van
pulled up to Means’ residence. Means and the other suspects were arrested. 
      After Means and the other suspects were arrested, Latin obtained a search warrant for Means’
residence and the black briefcase. No drugs were found in the residence or the briefcase. The
briefcase contained $79,060 in cash and various articles of paperwork. The three packages that
Latin purchased contained 85.9 % pure cocaine.
      Means filed a motion to suppress evidence claiming that some statements within Latin’s
affidavit were false and that those false statements served as the basis to establish probable cause
to issue the search warrant. The trial court denied Means’ motion. After a jury convicted him,
Means appealed. 
INSUFFICIENT EVIDENCE
      Means’ first issue on appeal claims that the evidence is insufficient to support his conviction
for delivery of cocaine by “actual transfer” to Latin because there was “no evidence” that he
either placed the cocaine underneath the tree or ordered someone else to do so. A defendant’s
assertion that the evidence is insufficient to sustain his conviction has been held to preserve a claim
that the evidence is legally insufficient. Weightman v. State, 975 S.W.2d 621, 624 n.6 (Tex.
Crim. App. 1998); Williams v. State, 958 S.W.2d 186, 190 (Tex. Crim. App. 1997); Bryant v.
State, 923 S.W.2d 199, 206 (Tex. App.—Waco 1996, no pet.). When reviewing a legal
sufficiency challenge, we review the evidence in the light most favorable to the verdict and
determine whether, based on that evidence and all reasonable inferences therefrom, any rational
trier of fact could have found the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 US. 307, 319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979);
Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995).
      The State alleged in the indictment that Means delivered cocaine in three ways: (1) by actual
transfer to Latin; (2) by constructive transfer to Latin; or (3) by offering to sell it to Latin. The
State, in anticipation of variances in the proof, may plead alternative theories of the same offense
in the conjunctive and charge the jury in the disjunctive. Lawton v. State, 913 S.W.2d 542, 551
(Tex. Crim. App. 1995); White v. State, 890 S.W.2d 69, 72 (Tex. Crim. App. 1994); Lehman v.
State, 792 S.W.2d 82, 84-85 (Tex. Crim. App. 1990). When the State does so, it is not required
to prove the defendant’s guilt under all the alleged theories; it only needs to prove guilt under one
theory to support the conviction. White, 890 S.W.2d at 72; Lehman, 792 S.W.2d at 84-85;
Bohnet v. State, 938 S.W.2d 532, 535 n.2 (Tex. App.—Austin 1997, pet. ref’d). 
      A “constructive transfer” occurs when a defendant transfers “a controlled substance either
belonging to [him] or under his direct or indirect control, by some other person or manner at the
instance or direction of the defendant.” Davila v. State, 664 S.W.2d 722, 724 (Tex. Crim. App.
1984); Stolz v. State, 962 S.W.2d 81, 82 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d). 
Here, the evidence shows that Means and Latin discussed how much cocaine Latin wanted to
purchase and its price. Means then directed Latin to get the purchase money and sit in the
Suburban. Means got into the Suburban, asked Latin where the money was, and directed Latin
to hand it to him. Means took the money and then told Latin where the cocaine was by pointing
to a trash bag beneath a tree in his yard. The Court of Criminal Appeals has stated that a
constructive transfer can occur when the seller places the drugs in a particular location and then
advises the buyer of this location so that the buyer may retrieve the drugs. Queen v. State, 662
S.W.2d 338, 340 (Tex. Crim. App. 1983). This is our present situation. Therefore, we find that
the evidence is legally sufficient to support Means’ conviction of delivery of cocaine by
constructive transfer and overrule his first issue.
MOTION TO SUPPRESS
      Means’ second issue on appeal claims that the trial court erred when it overruled his motion
to suppress because Latin made false statements in his supporting affidavit. Means claims that
Latin’s misstatements falsely created probable cause for the search warrant and that the various
articles of paperwork seized pursuant to the illegal search warrant should have been suppressed. 
Means claims that when the false allegations are excised from the probable cause affidavit, the
remaining statements do not establish probable cause and thus, the evidence was seized pursuant
to an illegal search warrant. See Franks v. Delaware, 438 U.S. 154, 154-55, 98 S.Ct. 2674,
2676, 57 L.Ed.2d 667 (1978).
      In Franks, the United States Supreme Court stated that if a defendant makes a substantial
preliminary showing that either the probable cause affiant made an intentionally or knowingly false
statement or made a statement with reckless disregard for the truth in the probable cause affidavit
and the false statement is necessary to the finding of probable cause, the defendant is entitled to
a hearing.


 Id. If the defendant establishes at the hearing by a preponderance of the evidence that
the affiant intentionally or knowingly made a false statement or made it with reckless disregard
for the truth, the false statement is excised from the probable cause affidavit. Id. The remainder
of the affidavit is then examined to determine if there is sufficient content to establish probable
cause. Id. If not, then the search warrant is void and the fruits of the search are excluded. Id.
at 155. 
      However, there is a presumption that a search warrant’s supporting affidavit is valid. Id. at
171. For a defendant to be entitled to an evidentiary hearing, his attack must be more than
conclusory. Id. The defendant must allege that the affiant made deliberate falsehoods or had a
reckless disregard for the truth and he must accompany those allegations by an offer of proof. Id. 
The defendant’s offer of proof must state specifically what portion of the probable cause affidavit
is allegedly false and should be accompanied by a statement of supporting reasons. Id. If the
defendant meets the above criteria and the material that is the subject of the alleged falsity or
reckless disregard is excised from the affidavit and the remainder of the affidavit is sufficient to
support a finding of probable cause, no hearing is required. Id. at 172. However, if the
remaining content is not sufficient to establish probable cause, the defendant is entitled to his
hearing. Id. at 172.
      At a motion to suppress hearing, the trial court is the trier of facts and the sole judge of the
credibility of the witnesses and the weight to be given their testimony. Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997). When reviewing a trial court’s ruling on a motion to
suppress, we must afford almost total deference to the trial court’s application of law to fact
questions which turn upon an evaluation of the credibility and demeanor of the witnesses. Loserth
v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998); Guzman, 955 S.W.2d at 89. We must
view the record evidence and all its reasonable inferences in the light most favorable to the trial
court’s ruling and sustain the trial court’s ruling if it is reasonably supported by the record and is
correct on any theory of law applicable to the case. Guzman, 955 S.W.2d at 89; Hernandez v.
State, 963 S.W.2d 921, 923 (Tex. App.—San Antonio 1998, pet. ref’d). However, we review
de novo the trial court’s determination of mixed questions of law and fact that do not turn upon
an evaluation of the credibility and demeanor of the witnesses. Loserth, 963 S.W.2d at 773;
Guzman, 955 S.W.2d at 89. 
      The determination of whether a probable cause affiant’s statements were false or made with
reckless disregard of the truth is a question of fact and the trial court, as the sole fact-finder and
judge of the witnesses’ credibility, is owed great deference and its ruling will be overruled only
if it was an abuse of discretion.


 Janecka v. State, 937 S.W.2d 456, 462 (Tex. Crim. App.
1996). 
      During the motion to suppress hearing, Means claimed that Latin’s probable cause affidavit
contained two false statements. First, Means claimed that Latin falsely stated that he saw a drug
transaction between Means and the unidentified “City of Houston” employee.


 Means claimed
that Latin did not actually witness a drug transaction because Latin could not see what the
unidentified man’s bundle contained because the bundle was concealed by a work shirt. Means
claimed that at most, Latin witnessed what he thought or suspected was a drug transaction.
      Second, Means claimed that Latin falsely stated that he offered to sell more drugs to Latin and
offered to reenter his residence to retrieve the additional drugs.


 Means pointed out that Latin’s
offense report, which Latin completed after the probable cause affidavit, did not contain an
account of Means’ alleged offer to sell Latin additional drugs nor his offer to reenter his house to
retrieve the drugs. Means argued that Latin’s offense report and probable cause affidavit
contradict each other because Latin would have included Means’ offer to commit another felony
in his offense report if that had actually transpired.
      During the suppression hearing, Latin testified that he knew that Means’ drug supplier was
a “City of Houston” employee who made his drug deliveries in a “City of Houston” vehicle. 
Latin stated that when he arrived at Means’ residence, he saw a “City of Houston” vehicle in the
driveway and saw the unidentified man enter the residence with a rectangular brick-shaped bundle
wrapped in a “City of Houston” work shirt. Latin averred that he witnessed Means and the
unidentified man count out money in an adjoining room. Latin stated that based upon these
observations and his experience as a narcotics officer, he formed the opinion that he witnessed a
drug transaction. 
      Latin further testified that the reason he did not include in his offense report Means’ offer to
sell him additional drugs and to retrieve them from his residence is that he did not remember all
the details of the undercover operation when he authored his offense report several days after
Means’ arrest. Latin stated that he completed his probable cause affidavit immediately after the
arrest and that the details were fresh in his mind and that is why his probable cause affidavit was
more detailed than his subsequent offense report. 
      Because the information in Latin’s affidavit was substantially correct and the information he
averred to in his affidavit was believed by him or accepted by him as true, there was no
misrepresentation within the meaning of Franks. See Janecka, 937 S.W.2d at 465; Massey v.
State, 933 S.W.2d 141, 147 (Tex. Crim. App. 1996). Therefore, we hold that the trial court did
not abuse its discretion in overruling Means’ motion to suppress.
      We overrule Means’ second issue. 
IMPROPER JURY ARGUMENTS
      Means’ third issue claims that the trial court erred when it allowed the State to engage in
improper jury argument by permitting the State to improperly inject facts that were outside the
record during its closing arguments. Specifically, Means complains about the following remarks:* * *
 
 STATE:. . . There’s some things I want to tell you. First is drug dealing is a
business. If you don’t think it is, then you are being naive.
 
Let me tell you something about that business. It’s not handled the way
legitimate businesses are. You don’t keep account records. You don’t
write people checks. You don’t do things that track yourself back --
 
DEFENSE:I’m going to object. None of this is in evidence.
 
COURT:Overruled. The jury understands this is the argument phase of the case. 
Continue, please.

* * *

      Proper jury argument must be confined to four permissible areas: (1) summation of the
evidence; (2) reasonable deductions from the evidence; (3) answers to the arguments of opposing
counsel; and (4) pleas for law enforcement. McFarland v. State, 989 S.W.2d 749, 751 (Tex.
Crim. App. 1999); Williams v. State, 948 S.W.2d 954, 957 (Tex. App.—Waco 1997, pet. ref’d). 
      During his closing argument, Means questioned the State’s lack of corroborative and physical
evidence. Means also challenged the veracity of Latin’s testimony and urged the jury that Latin
may have fabricated his testimony in order to compensate for the lack of evidence against him. 
Means also insinuated that it was not reasonable for the State to have as little evidence as it did
and that this was further proof that he did not commit the offense as charged by the State. 
      The State, in response to Means’ closing arguments, argued that drug dealing is a business
in which records are not kept like they would be in that of a legitimate business. The State
claimed that this was the reason that there was such scant physical evidence against Means. The
State’s closing arguments were a proper response to Means’ closing arguments.
      We overrule Means’ third issue.
      The judgment of the trial court is affirmed.
 
                                                            REX D. DAVIS
                                                             Chief Justice


Before Chief Justice Davis
      Justice Vance
      Justice Gray
Affirmed
Opinion delivered and filed October 13, 1999
Do not publish