11th Court of Appeals
Eastland, Texas
Opinion
 
Joseph Donnell Battise 
            Appellant
Vs.                  No. 11-02-00333-CR -- Appeal from Dallas County
State of Texas
            Appellee
 
            The jury convicted Joseph Donnell Battise of the murder of Alvin Williams and assessed his
punishment at 70 years confinement. We affirm.
            Appellant filed a brief on May 28, 2003, in which he brings two points of error. Appellant
argues that the evidence is legally and factually insufficient to support the jury’s verdict that he did
not act in self-defense. When reviewing the legal sufficiency of the evidence to support a verdict,
we view all of the evidence in the light most favorable to the verdict, asking whether any rational
trier of fact could have found the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307 (1979); Wesbrook v. State, 29 S.W.3d 103, 111
(Tex.Cr.App.2000), cert. den’d, 532 U.S. 944 (2001). When a defendant challenges the legal
sufficiency of the evidence to support rejection of a defense such as self-defense, we examine all of
the evidence in the light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense and also could have found against the
defendant on the self-defense issue beyond a reasonable doubt. Saxton v. State, 804 S.W.2d 910,
914 (Tex.Cr.App.1991). When a defendant challenges the factual sufficiency of the rejection of a
defense, the reviewing court reviews all of the evidence in a neutral light and asks whether the
State’s evidence taken alone is too weak to support the finding and whether the proof of guilt,
although adequate if taken alone, is against the great weight and preponderance of the evidence. 
Zuliani v. State, 97 S.W.3d 589, 595 (Tex.Cr.App.2003); Johnson v. State, 23 S.W.3d 1, 11
(Tex.Cr.App.2000).
            The jury heard three somewhat conflicting stories concerning the night of the murder from
Geremiah Edem, Christy Lea Hatcher, and appellant. The jury is the sole judge of the credibility of
the witnesses and the weight to be given their testimony. TEX. CODE CRIM. PRO. ANN. arts.
36.13 & 38.04 (Vernon 1979 & 1981). It is the exclusive province of the jury to reconcile conflicts
in the evidence. Wesbrook v. State, supra. 
             Edem testified that on August 29, 2001, he and the victim went to Hatcher’s apartment. 
Edem said that they watched movies for a while and that then the victim went to the bedroom to go
to sleep. Edem and Hatcher continued watching movies. Edem testified that there was a loud knock
on the door and that appellant said: “Anybody here, I’m going to kill them.” Edem said that
appellant told them he had a gun. Edem ran to the bedroom to awaken the victim. The victim woke
up and went to the front room of the apartment to help Hatcher because appellant was throwing her
against the wall. Edem jumped from the balcony of the third story apartment. Edem testified that,
after he jumped from the balcony, he heard appellant say: “Why you running, nigger?” Edem then
heard three shots. 
            Hatcher testified at trial that she and appellant dated for approximately one year; but that, at
the time of the offense, they were not in a “committed relationship.” Hatcher stated that the victim
and Edem came to her apartment at approximately 1:00 a.m. Hatcher said that they all watched
movies until approximately 2:00 a.m. when the victim went to her bedroom to sleep. Hatcher and
Edem continued watching movies for a while, and then there was a knock at the door. Hatcher said
that she let appellant into the apartment and that he said that Hatcher “smelled like [she] had been
involved in some kind of sexual activity.” Hatcher stated that appellant went into the restroom and
asked why there was powder on the floor of the restroom and why there was a wash rag on the
counter. 
            Hatcher testified that appellant went toward the bedroom and that the victim and Edem were
both inside the bedroom. Appellant tried to open the door. Hatcher said that someone inside the
bedroom pushed the door back closed. Hatcher stated that appellant pushed the door open, turned
on the light, and saw two people in the room. The victim jumped up, and appellant reached for
appellant’s gun. Appellant aimed the gun at the victim and Edem. Hatcher was screaming for
appellant not to shoot. Edem jumped from Hatcher’s balcony. 
            Hatcher testified that there was a “struggle” between appellant and the victim that ended up
in the living room. Hatcher said that the victim was trying to leave through the front door of the
apartment. Hatcher tried to get the gun away from appellant, but appellant continued to point the
gun at the victim. Hatcher testified that, when the victim got near the door, he grabbed her by the
neck and tried to pull her out of the door. Appellant yelled for the victim to let go of Hatcher.
Appellant then shot the victim.
            Hatcher testified that the victim was on the ground and that he started “gurgling.” Appellant
went to his car. Hatcher went inside her apartment, got her purse, and left. Appellant then
approached Hatcher and told her to go with him. Hatcher testified that appellant told her she “should
go with him unless [she] wanted to be one of them.” Hatcher left with appellant. Appellant was
looking for Edem, and he told Hatcher that he also should have killed Edem. Appellant also told
Hatcher that he should have killed her as well. The following day, appellant took Hatcher to her
brother’s house, and her brother called the police.
            Appellant testified at trial that, at approximately 3:15 a.m., he went to Hatcher’s apartment
to take her to his new apartment. Appellant said that Hatcher let him in her apartment and that he 
went to her bathroom. Appellant said that the bathroom was “nasty” and that he asked Hatcher about
the condition of her bathroom. Appellant said that, as he was leaving the bathroom, he saw a foot
under the crack of the bedroom door. Appellant pushed on the door, and the door “pushed back.” 
Appellant asked who was in the room and then turned to go back to the front of the apartment. 
Appellant stated that someone grabbed him from behind.
            Appellant testified that he had a weapon in his pocket and that he grabbed the weapon as he
struggled with the victim. Appellant said that the struggle took them into the front room of the
apartment. Appellant was able to separate from the victim, and Hatcher got in between them.
Appellant said that both he and Hatcher were yelling for the victim to leave. The victim grabbed
Hatcher and began choking her. Appellant tried to pull Hatcher away from the victim. Appellant
said that the victim was in the front doorway and that he could hear noises from the bedroom that
sounded like a “gun racking.” Appellant looked toward the bedroom; and, when he turned back
around, the victim was coming toward him. The victim released Hatcher as he was coming toward
appellant, and appellant fired two shots. Appellant went to his car and told Hatcher that he was
leaving if she wanted to go with him. Appellant testified that he never threatened to kill Hatcher or
the victim.
            TEX. PENAL CODE ANN. § 9.31(a) (Vernon 2003) provides that a person “is justified in
using force against another when and to the degree he reasonably believes the force is immediately
necessary to protect himself against the other’s use or attempted use of unlawful force.” TEX.
PENAL CODE ANN. § 9.32(a) (Vernon 2003) states:
            (a) A person is justified in using deadly force against another:
 
            (1) if he would be justified in using force against the other
under Section 9.31;
 
            (2) if a reasonable person in the actor’s situation would not
have retreated; and
 
            (3) when and to the degree he reasonably believes the deadly
force is immediately necessary:
 
            (A) to protect against the other’s use or at-tempted use of unlawful deadly force; or
 
            (B) to prevent the other’s imminent com-mission of aggravated kidnapping, murder, sexual
assault, aggravated sexual assault, robbery, or
aggravated robbery. 
 
            The State presented evidence that the victim did not have a weapon at the time of the offense. 
Hatcher stated that the victim was by the door, trying to pull her out of the apartment at the time
appellant shot him. The record does not show that the victim was using or attempting to use
unlawful force against appellant. After reviewing all of the evidence, we find that a rational trier of
fact could have found the essential elements of the offense and also could have found against
appellant on the self-defense issue beyond a reasonable doubt. We also find that the verdict is not
against the great weight and preponderance of the evidence. Appellant’s first and second points of
error are overruled.
            On August 11, 2003, appellant filed an amended brief in which he brings two additional points
of error. Appellant first argues that the trial court erred in overruling his objection to the State’s
improper jury argument. To be proper, jury argument must encompass summation of evidence
presented at trial, reasonable deductions drawn from said evidence, answers to opposing counsel’s
argument, or pleas for law enforcement. Lagrone v. State, 942 S.W.2d 602, 619 (Tex.Cr.App.), cert.
den’d, 522 U.S. 917 (1997). To preserve error on appeal about an erroneous jury argument, an
appellant must show he objected and pursued his objection to an adverse ruling. McFarland v. State,
989 S.W.2d 749, 751 (Tex.Cr.App.1999). Error in jury argument will not be reversible unless, in
light of the record as a whole, the argument is extreme or manifestly improper, violates a mandatory
statute, or introduces new facts harmful to the accused into the trial. Bell v. State, 724 S.W.2d 780,
803 (Tex.Cr.App.1986), cert. den’d, 479 U.S. 1046 (1987).
            During it’s closing argument, the State argued:
The defense doesn’t have an answer as to why [Hatcher] would come in here and say
this about [appellant]. They don’t have anything to talk about. They want you to
believe - - even [appellant] wants to sit up here and make you think she’s just this
nasty, gross person so you don’t believe her. That’s what he wants you to think.
 
            Folks, think about it. [Hatcher], traffic tickets, hot checks, prostitution. What
do you think that’s going to give her? A few days in jail. 
 
The trial court sustained appellant’s objection that the argument was outside of the evidence. The
State continued:
            Reasonable person is putting - - she is putting her life on the line by coming
in here. Wouldn’t she just rather sit in jail for a few days than have to come in here
and testify against this man? 
 
Appellant’s objection that the argument was assuming facts not in evidence was overruled. The
State then argued:
            Testify against this man who threatened her that night. Just a few days out
of her life would be gone. If this man walks on a murder charge after she’s come in
here and told you the truth, what do you think is going to happen to her? What do
you think is going to happen?
 
            He threatened her that night and how do we know that? He even told you. 
He had that gun sitting right out there as they were coming home. You heard her tell
you, “I should just waste you, too, and dump your body on the side of the road. 
Nobody will ever know.”
 
            On appeal, appellant specifically complains about the State’s argument that Hatcher was
“putting her life on the line” by testifying and that, “[i]f this man walks on a murder charge after
she’s come in here and told you the truth, what do you think is going to happen to her?” The trial
court overruled appellant’s objection to the first comment; however, appellant did not object to the
second comment. Appellant has not preserved his complaint as to the second comment for appellate
review. TEX.R.APP.P. 33.1; Ganesan v. State, 45 S.W.3d 197, 205-07 (Tex.App. - Austin 2001,
pet’n ref’d). Moreover, assuming appellant has preserved his complaint, he has not shown reversible
error.
            Viewing the comments in context with the argument, we find that the comments were an
answer to the argument of opposing counsel and a reasonable deduction from the evidence. During
his closing argument, appellant argued that Hatcher was lying and that she “reluctantly - - she wants
to cooperate. She has all of those pending - - whether it’s hot checks and prostitution and traffic
tickets.” Appellant argued that Hatcher wanted to cooperate because she did not want to go to jail. 
The State’s argument responds to appellant’s argument that Hatcher was cooperating with the State
to avoid going to jail.
            It is error for the State to argue that witnesses are scared to testify when there is no evidence
to support the assertion. Johnson v. State, 662 S.W.2d 368, 369-70 (Tex.Cr.App.1984); Thomas v.
State, 519 S.W.2d 430, 431 (Tex.Cr.App.1975); Person v. State, 706 S.W.2d 153 (Tex.App. -
Houston [1st Dist.] 1986, no pet’n). However, Hatcher testified at trial that she was subpoenaed to
testify and that she did not want to appear in court. Hatcher also testified that appellant told her that
he should have killed her. Viewing the comments in context, the State’s argument is a reasonable
deduction from the evidence that, because of appellant’s previous threats, Hatcher felt she was taking
a risk by testifying against him. Moreover, assuming without agreeing that the State’s argument was
improper, the State’s comments were not extreme or manifestly improper and did not introduce new
facts harmful to appellant into the trial. Ganesan v. State, supra. This point of error is overruled.
            Appellant next argues that he received ineffective assistance of counsel. In order to
determine whether appellant’s trial counsel rendered ineffective assistance at trial, we must first
determine whether appellant has shown that counsel’s representation fell below an objective standard
of reasonableness and, if so, then determine whether there is a reasonable probability that the result
would have been different but for counsel’s errors. Strickland v. Washington, 466 U.S. 668 (1984);
Hernandez v. State, 988 S.W.2d 770 (Tex.Cr.App.1999). We must indulge a strong presumption
that counsel’s conduct fell within the wide range of reasonable professional assistance, and appellant
must overcome the presumption that, under the circumstances, the challenged action might be
considered sound trial strategy. Stafford v. State, 813 S.W.2d 503, 508-09 (Tex.Cr.App.1991).
            Appellant argues that his trial counsel was deficient in failing to object when the State
introduced evidence of extraneous offenses and bad acts at the punishment phase of the trial without
giving notice as required by TEX. CODE CRIM. PRO. ANN. art. 37.07, § 3(g) (Vernon Supp.
2004). Appellant first complains that his trial counsel was ineffective in failing to object to
testimony that appellant assaulted Larry Davis. Davis testified that he was investigating a
disturbance involving appellant at some property he managed. Davis stated that he called 911 for
assistance and that appellant then hit him in the back of the head. The police later arrived, and
appellant was eventually convicted of resisting arrest. 
            The record shows that the State provided appellant with notice of its intent to introduce
evidence of appellant’s arrest and conviction for committing the offense of resisting arrest. 
Appellant’s assault on Davis was part of the same episode as the offense of resisting arrest. The
State also provided appellant with Davis’s name as a potential witness. The purpose of the notice
requirement is to avoid unfair surprise and trial by ambush. Nance v. State, 946 S.W.2d 490, 493
(Tex.App. - Fort Worth 1997, pet’n ref’d). There is no indication that appellant was unfairly
surprised by the evidence. Appellant has not shown that his trial counsel was ineffective in failing
to object to Davis’s testimony.
            Appellant next complains of Hatcher’s testimony during the punishment phase of the trial. 
 Hatcher testified that she worked as a waitress at a strip club but that, at appellant’s suggestion, she
started dancing at the club. Hatcher said that appellant wanted her to dance at the club to make more
money. Hatcher also testified that appellant instructed her to go on “dates” with men from the club
to get more money. Appellant contends that his trial counsel was ineffective in failing to object to
the testimony that appellant “made [Hatcher] dance topless and work as a prostitute” because the
State did not provide him with notice of its intent to offer the evidence. Hatcher’s testimony does
not relate a bad act by appellant. The testimony does not reflect that appellant forced her to engage
in any illegal activity. Appellant has not shown that his trial counsel was ineffective in failing to
object that he was not provided with notice of the evidence. 
            Appellant complains that his trial counsel was deficient in failing to object to testimony that
appellant carried a gun. Hatcher testified during the punishment phase of the trial that appellant had
previously threatened her with a handgun. Hatcher said that she had seen him with that gun before
and that appellant carried a gun. The State asked Hatcher, “You said that he would carry a gun. He
always have the same type of gun with him?” Hatcher said that appellant carried the small handgun. 
Hatcher also testified that appellant possessed a rifle as well. The State provided appellant with
notice of its intent to offer testimony that appellant threatened Hatcher with the gun. Appellant was
aware that Hatcher would testify that appellant was in possession of a gun. Appellant has not shown
that his trial counsel was ineffective in failing to object to the testimony. Moreover, appellant has
not established that his trial counsel’s failure to object pursuant to Article 37.07, section 3(g) was
not sound trial strategy. Thompson v. State, 9 S.W.3d 808 (Tex.Cr.App.1999).
            Appellant also argues that his trial counsel was ineffective in failing to object to the State’s
closing argument at the punishment phase of the trial. The State commented that:
[O]ne thing that speaks volumes about this man is who you didn’t hear from in this
courtroom today about what a good guy he is....You don’t hear from any friend
saying what a great guy he is, not a single person coming in here from his family or
his group of friends.
 
It is within the bounds of permissible jury argument for the State to comment on an appellant’s
failure to call competent and material witnesses. Sonnier v. State, 913 S.W.2d 511, 523
(Tex.Cr.App.1995). In the punishment phase of a noncapital case, the prosecutor may comment on
the failure of an accused to present any witnesses or evidence at all on his behalf or to call certain
particularized competent and material witnesses to testify about character or other relevant matters. 
Thomas v. State, 638 S.W.2d 481, 483 (Tex.Cr.App.1982); Shaw v. State, 826 S.W.2d 763, 767
(Tex.App. - Fort Worth 1992, pet’n ref’d). Appellant has not shown that his trial counsel was
ineffective in failing to object to the State’s closing argument during punishment. This point of error
is overruled.
 
 
            The judgment of the trial court is affirmed.
 
                                                                                                W. G. ARNOT, III
                                                                                                CHIEF JUSTICE
 
May 13, 2004
Do not publish. See TEX.R.APP.P. 47.2(b).
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.