Affirmed and Opinion filed May 4,
2010.

In
The

Fourteenth
Court of Appeals



NO. 14-08-01052-CR



Alan Michal
Nickerson, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 185th District Court

Harris County, Texas

Trial Court
Cause No. 1143864



 

OPINION 

A jury convicted Alan Michal Nickerson of capital
murder and he was sentenced to life imprisonment.  In nine issues, Nickerson contends
that the trial court erred by:  (1) allowing Nickerson’s statements to police
officers to be admitted into evidence; (2) failing to instruct the jury on the
lesser-included offense of felony murder; (3) allowing a police officer to
testify about inadmissible hearsay statements; and (4) failing to grant a
mistrial when the prosecutor repeatedly argued outside the record.  We affirm.

I

            At about nine
o’clock on the evening of November 29, 2007, neighbors Raul Duran and Jorge Lemus
were standing in the parking lot of their apartment complex having a
conversation.  The complainant, Cartrell Odom, who also lived in the apartment complex,
approached them to join the discussion.  The complainant was a peace officer,
but he was dressed in plain clothing that night.  The three men had been
talking for about thirty minutes when four African-American, teenaged males walked
toward them in a single-file line.  Lemus testified that the first teenager
wore a white hoodie with camouflage patterns, but the other three males wore
black hoodies.  Duran testified that the teenagers encircled the three men and
drew firearms.  It appeared to Lemus the teenager wearing the white hoodie was
in charge because he was “doing all the talking,” including directing the three
men to get down and proclaiming, “This is a fucking robbery.”  Both Lemus and
Duran got down on the ground.  Duran testified that he could feel a gun pressed
against his head, so he gave the four males everything in his pockets,
including his cell phone.  Lemus also relinquished his property.  Lemus stated
that although he was on the ground, he kept his head facing forward and had a
“very clear view of everything [that was] going on.”

            Lemus stated that
he witnessed the complainant start to get down on the ground, but after being struck
several times with a gun, the complainant stood up and stated, “You cannot
treat me like this.”  Lemus testified that the complainant began to argue with
the teenager in the white hoodie, who then pointed his gun at the complainant. 
The complainant hit his assailant’s hand, turned around, and began to run. 
Lemus stated that he heard a gunshot fired in the complainant’s direction. 
Then, the assailant chased the complainant, and he fired another shot causing
the complainant to fall to the ground.  Lemus testified that the assailant who
shot the complainant walked over to the complainant’s body and shot him in the
head—“a point-blank shot.”  Albert Chu, assistant medical examiner, later performed
the autopsy on the complainant’s body and testified that both shots, to the
complainant’s back and head, were fatal wounds.  After the third shot was
fired, the four robbers jumped into a black sedan and drove out of the
apartment complex. 

               After the
shooting, several Houston Police Department (“HPD”) officers arrived on the
scene, including Sergeant Tony Huynh.  Sergeant Huynh testified that when he
discovered Duran’s cell phone was stolen, and he and U.S. Marshal Lowenstein decided
to track or “ping” the cell phone to find its location.  Sergeant Huynh stated that
he followed Lowenstein in an unmarked vehicle to 4839 Redbud.  After arriving
at the address, Sergeant Huynh, HPD Sergeant Mark Newcomb, and two uniformed
officers knocked on the front door and requested permission to enter and speak
with the young African-American male in the home.  Loveless Nickerson, mother
of Alan Michal Nickerson, gave the officers permission to enter the home and
speak with her son.  Once in the home, Sergeant Newcomb found Nickerson, who
appeared to be sleeping.  He testified that when he tried to call Duran’s cell
phone, it began to ring from underneath Nickerson’s pillow.  The officers asked
Nickerson if he was willing to accompany them to the police station.  Nickerson
agreed to go with the officers and speak with them.

            Sergeant Newcomb
testified that once they arrived at the police station, Nickerson was
registered as a visitor and was not under arrest.  Sergeant Newcomb stated that
he read Nickerson his statutory warnings, and he taped an interview in which
Nickerson confessed he was involved in the robbery as the getaway driver.  After
Nickerson’s statement, HPD Officer Alan Brown took Nickerson before a
magistrate judge to have his legal warnings administered again.  Officer Brown
testified that Nickerson was now in custody.  During the course of the day,
Nickerson gave four different statements to Officer Brown.  After the second
statement, in which Nickerson admitted to wearing the white hoodie, Officer
Brown went to Nickerson’s home, searched it, and found the white hoodie. 
Finally, after the fourth statement, Nickerson admitted that he was the person
who shot the complainant.  

             Before trial,
Nickerson requested a hearing on his motion to suppress his statements.  The
trial court held the hearing and denied Nickerson’s motion to suppress.  After
hearing all of the evidence at trial, the jury convicted Nickerson of capital
murder.  Nickerson was sentenced to confinement for life.  This appeal
followed. 

II

In
his first issue, Nickerson argues that he was illegally arrested at his home
and placed in custody; therefore, his statements to the police officers were
involuntary.  He complains that the trial court erred by allowing his
statements to be admitted into evidence.  The State contends that Nickerson was
not unlawfully arrested because the evidence at trial proves he voluntarily
accompanied the officers to the police station.  

We
review the trial court’s denial or admission of the evidence using an
abuse-of-discretion standard. See Apolinar v. State, 155 S.W.3d
184, 186 (Tex. Crim. App. 2005); Webb v. State, 991 S.W.2d 408, 418
(Tex. App.—Houston [14th Dist.] 1999, pet. ref’d).  While a trial court has
substantial discretion, it can abuse its discretion if its rulings are outside
of “that zone within which reasonable persons might disagree.”  Webb,
991 S.W.2d at 418; see Apolinar, 155 S.W.3d at 186.  A trial court’s
ruling on the admissibility of evidence will be upheld if the record reasonably
supports the ruling. Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim.
App. 2002).  

Additionally,
a trial court’s ultimate custody determination presents a mixed question of law
and fact.  Herrera v. State, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (citing
Thompson v. Keohane, 516 U.S. 99, 112–13 (1995)).  We afford almost
total deference to the trial court’s determination when questions of historical
facts are based on an evaluation of credibility and demeanor.  Id. at 526–27
(citing Ripkowski v. State, 61 S.W.3d 378, 381 (Tex. Crim. App. 2001)). 
We review de novo, however, those mixed questions of law and fact not turning
on credibility or demeanor.   Id. at 527.     

Was
Nickerson in Custody?

Article
38.22 of the Texas Code of Criminal Procedure lays out the requirements to
admit a person’s oral or written statements made during a custodial
interrogation, as well as specifically exempts from its requirements statements
made outside of custody or made voluntarily.  Tex. Code Crim. Proc. Ann. art.
38.22 (Vernon 2005); Herrera, 241 S.W.3d at 526.  “A person is arrested
when he has been actually placed under restraint or taken into custody by an
officer or person executing a warrant of arrest, or by an officer or person
arresting without a warrant.”  Tex. Code Crim. Proc. Ann. art. 15.22 (Vernon 2005). 
A person is in custody if, under the circumstances, a reasonable person would
believe that his freedom of movement was restrained to the degree associated
with formal arrest.  Herrera, 241 S.W.3d at 525; Dowthitt v. State,
931 S.W.2d 244, 254 (Tex. Crim. App. 1996); Turner v. State, 252 S.W.3d
571, 576 (Tex. App.—Houston [14th Dist.] 2008, pet. ref’d), cert. denied,
129 S. Ct. 1325 (2009).  Under the “reasonable person” standard, we assume that
person is innocent.  Dowthitt, 931 S.W.2d at 254; Turner, 252
S.W.3d at 576.  When we review whether a person was in custody, our review
includes an examination of all of the objective circumstances surrounding the
questioning.  Herrera, 241 S.W.3d at 525–26 (citing Stansbury v.
California, 511 U.S. 318, 323, 325 (1994)).  

The
Court of Criminal Appeals has recognized four factors in deciding whether a
person is in custody: (1) probable cause to arrest; (2) subjective intent of
the police; (3) focus of the investigation; and (4) subjective belief of the
defendant.  Dowthitt, 931 S.W.2d at 254; Turner, 252 S.W.3d at
576.  But factors two and four are relevant only if they are manifested in
actions or words of law-enforcement officers.  Dowthitt, 931 S.W.2d at
254.  Furthermore, an interrogation may be noncustodial when it begins, but
then later rise to the level of a custodial interrogation.  Id. at 255; Turner,
252 S.W.3d at 577.  

The
Court of Criminal Appeals has also established four general situations which
may constitute custody: (1) if the suspect is physically deprived of his
freedom in any significant way; (2) if a law-enforcement officer tells the
suspect not to leave; (3) if a law-enforcement officer creates a situation that
would lead a reasonable person to believe that his freedom of movement has been
significantly restricted; and (4) there is probable cause to arrest the suspect
and the law-enforcement officer did not tell the suspect he is free to leave.  Gardner
v. State, No. AP-75,582, —S.W.3d—, 2009 WL 3365652, at *9 (Tex. Crim. App.
Oct. 21, 2009); Dowthitt, 931 S.W.2d at 255; Turner, 252 S.W.3d
at 577.  In all four situations, there must be a restriction of freedom of
movement that is tantamount to an arrest.  See Dowthitt, 931
S.W.2d at 255.  In the fourth circumstance, an officer’s subjective intent to
arrest is not relevant to our examination unless the officer’s subjective
intent was somehow conveyed to the suspect.  Dowthitt, 931 S.W.2d at
255; Turner, 252 S.W.3d at 577.  Additionally, courts have emphasized
that stationhouse questioning does not, in and of itself, constitute custody.  Turner,
252 S.W.3d at 576–77.  

“[W]hen
a person voluntarily accompanies police officers, who are then only in the
process of investigating a crime, to a certain location, and he knows or should
know that the police officers suspect he may have committed or may be
implicated in committing the crime, we are unable to hold that under the
circumstance such person is in custody.”  Turner, 252 S.W.3d at 579–80
(citing Dancy v. State, 728 S.W.2d 772, 778–79 (Tex. Crim. App. 1987))
(holding that although the defendant was handcuffed for officer-safety reasons
before he was placed in the backseat of an unmarked vehicle, the defendant had
already consented to voluntarily accompany the officers to the station;
therefore, the defendant was not in custody when he gave his statements to the
officers).  If police officers invite or request a person to speak with them,
and the person is acting on this request on his own accord without force,
threat, or coercion, then the act is voluntary and the person is not in
custody.  Id. at 580.  

During the hearing on the motion to suppress, Sergeant
Newcomb recounted that he, Sergeant Huynh, and two uniformed officers knocked
on Nickerson’s front door and requested permission to enter the home and speak
with Nickerson.  Sergeant Newcomb admitted, however, that although only four
officers entered the home, about twenty police officers were in the
neighborhood when Nickerson’s mother opened the front door.  Sergeant Newcomb
testified that Nickerson’s mother gave the officers permission to enter the
home and speak with Nickerson.  Additionally, Sergeant Newcomb stated that Nickerson
voluntarily agreed to go with the officers, the officers never drew their
weapons, and Nickerson was not placed in handcuffs.  Furthermore, Nickerson was
not driven to the police station in a marked police vehicle.  Sergeant Newcomb
testified that it was not until after Nickerson told him about the robbery that
he had probable cause to place Nickerson into custody.  

Nickerson’s sister and mother testified that there
were more than four police officers present in and around their home when the
officers asked permission to speak to Nickerson.  Nickerson’s sister stated that
there were at least twenty officers present that night, including ten officers
inside her home.  She testified the uniformed officers had their guns drawn,
and her brother appeared to be scared and nervous.  Nickerson’s sister stated that
she saw the officers tape brown bags on her brother’s hands, but she could not
recall if he was handcuffed.  Nickerson’s mother, however, testified that
Nickerson was indeed handcuffed.  She also recalled Nickerson being escorted to
the back of a marked police vehicle, although she admitted she was “not a
hundred percent sure.”  Contrary to her daughter’s testimony, Nickerson’s
mother testified she never saw any of the officers pull their guns out of their
holsters.  But Nickerson’s sister and mother agreed that Nickerson was not
threatened or forced to go with the police officers, and he accompanied the
police on his own accord.  Nickerson’s sister even admitted there was no reason
to believe her brother’s statements to the police were anything but voluntary
statements.  

According
to Sergeant Newcomb, “I spoke with [Nickerson] and asked him if he’d be willing
to come downtown and speak with us . . . [about his] possession of [Duran’s]
phone.”  Sergeant Newcomb, emphasizing that Nickerson was not under arrest,
testified that Nickerson agreed to accompany him to the police station. 
Sergeant Newcomb even stated that when he was at Nickerson’s home, he did not
have probable cause to arrest Nickerson on either aggravated robbery or capital
murder.  Furthermore, Sergeant Newcomb testified that if Nickerson had been in
custody, he would have been handcuffed and transported in a marked police
vehicle.  Although Nickerson’s mother testified that Nickerson was handcuffed
and Nickerson’s sister stated Nickerson appeared scared and nervous, both
agreed Nickerson accompanied the police officers voluntarily without threat,
force, or coercion.  Even though the witnesses’ versions of the account
differed, the trial court was in the best position to evaluate the credibility
of the witnesses and was free to believe or disbelieve the testimony.  See
Mason v. State, 116 S.W.3d 248, 256 (Tex. App.—Houston [14th Dist.] 2003,
pet. ref’d).  Based on the evidence, Nickerson was never physically deprived of
his freedom in any significant way, never told he could not leave, never
restricted in his movement to amount to an arrest, nor was there probable cause
to arrest him at his home.  See Gardner, —S.W.3d—, 2009 WL
3365652, at *9.  Nickerson was not illegally arrested or in custody when he was
escorted from his home.  We hold the trial court did not abuse its discretion
in concluding Nickerson was not in custody or in admitting the statements into
evidence.  Accordingly, we overrule Nickerson’s first issue.       

Were
Nickerson’s Statements Voluntary?

In
his second issue, Nickerson contends that he involuntarily gave his statements
to police officers during his four interviews; therefore, the trial court erred
because the statements should not have been admitted as evidence.  The State first
asserts that Nickerson failed to preserve his contention of voluntariness for
appeal, so this argument is waived.  But even if Nickerson properly preserved
this issue, the State claims that Nickerson failed to properly brief the issue,
and therefore he has waived his argument.  Finally, if Nickerson has not waived
the issue, the State contends that there is no evidence to demonstrate
Nickerson’s statements to Officer Brown were anything but voluntary.   

The
State complains that Nickerson has waived this argument because he never
asserted that his statements were involuntary during the hearing on his motion
to suppress.  The Texas Rules of Appellate
Procedure require a party to preserve error for appellate review by
demonstrating the error on the record. Tex. R. App. P. 33.1(a); see Broxton
v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).  The party must make
the complaint, objection, or motion in a timely manner and “state[] the grounds
for the ruling that the complaining party [seeks] from the trial court with
sufficient specificity to make the trial court aware of the complaint.” Tex. R.
App. P. 33.1(a)(1)(A).  If a party’s objection at trial does not correspond
with its issue on appeal, the party has waived the issue. Broxton, 909
S.W.2d at 918.  Although in his closing statement at
the hearing, Nickerson’s attorney solely argued the illegal-arrest issue, both
Nickerson’s motion to suppress and questions during the hearing raised the
complaint of involuntariness.  The State incorrectly argues Nickerson’s
objection at trial does not comport with his complaint on appeal. 
Additionally, Nickerson has cited to the record and provided this court with
authority to support his contention, so he has not waived his argument due to
briefing waiver as the State contends.  See Tex. R. App. P. 38.1(i).    

Article
38.21 of the Texas Code of Criminal Procedure provides that a defendant’s
statements may be used against him “if it appears that the same was freely and
voluntarily made without compulsion or persuasion.” Tex. Code Crim. Proc. Ann.
art. 38.21 (Vernon 2005); see Martinez v. State, 127 S.W.3d 792, 794
(Tex. Crim. App. 2004).  Section 3 of Article 38.22 provides that if a
defendant’s statement was made as a result of custodial interrogation, then the
statement is inadmissible unless, among other requirements: (1) the electronic
recording of the defendant’s statements shows the defendant received certain
admonishments required under section 2 of Article 38.22; and (2) the defendant
knowingly, intelligently, and voluntarily waived those rights.  See Tex.
Code Crim. Proc. Ann. art. 38.22 § 3(a).  A statement is involuntary if it was
taken in violation of due process or due course of the law because the
statement was not freely given due to coercion, force, or improper influence.  Wolfe
v. State, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996).  To determine whether
a statement was made voluntarily, courts examine the totality of the
circumstances surrounding the acquisition of the statement.  Delao v. State,
235 S.W.3d 235, 239 (Tex. Crim. App. 2007); Wyatt v. State, 23 S.W.3d
18, 23 (Tex. Crim. App. 2000); Creager v. State, 952 S.W.2d 852, 855
(Tex. Crim. App. 1997).  These circumstances can include length of detention,
denial of access to family members, lack of sleep, and lack of food.  See
Smith v. State, 779 S.W.2d 417, 428–29 (Tex. Crim. App. 1989)
(discussing lack of food and concluding eight hours of questioning without food
did not render the confession involuntary because the defendant was willing to
continue the interview); Barney v. State, 698 S.W.2d 114, 120, 121 (Tex.
Crim. App. 1985) (discussing sleep deprivation and deciding the confession was
voluntary even though the defendant had not slept for sixteen hours); Gomes
v. State, 9 S.W.3d 373, 377 (Tex. App.—Houston [14th Dist.] 1999, pet.
ref’d) (discussing length of detention and denial of access to family).   Nickerson
argues that he was interrogated for more than six hours, he never slept during his
ten-to-twelve hours in custody, he was fed just once during his duration in
custody, and he had very little time to speak with his family members.  We
review the record for evidence to determine if Nickerson voluntarily gave his
statements.

During
the hearing on the motion to suppress, Officer Brown testified that he knew
Nickerson was in custody before he began interviewing him.  He stated that he
took Nickerson before a magistrate judge to receive his statutory warnings. 
Officer Brown also gave Nickerson his statutory warnings before each of his four
interviews with Nickerson, and Nickerson waived his rights each time. 
Additionally, Officer Brown emphasized that Nickerson neither requested an
attorney nor gave any indication he did not want to speak with Officer Brown. 
Officer Brown stated that he began his first interview with Nickerson at 8:44
a.m. and ended his last interview with Nickerson at 4:21 p.m.  But the record
does not reflect that Officer Brown interviewed Nickerson continuously during
that entire time period.  To the contrary, Officer Brown’s testimony in the record
shows the first interview lasted nineteen minutes and the fourth interview lasted
nine minutes.  Furthermore, the audiotapes in the record indicate the second
interview was seventeen minutes and fifteen seconds and the third interview was
four minutes and forty-seven seconds.  In total, the four interviews lasted
about fifty minutes.  Additionally, as the State emphasizes in its brief,
Officer Brown “conduct[ed] other activities apart from questioning” Nickerson
during Nickerson’s time in custody.  Some of the activities included taking
Nickerson to the magistrate judge, providing food to Nickerson, and escorting
Nickerson to his home to retrieve the white hoodie.  

Nickerson
argues that he was denied access to his family members during his time in
custody.  But the record does not demonstrate that Nickerson requested to speak
to his family members or that any officer specifically denied Nickerson access
to them.  Furthermore, Officer Brown allowed Nickerson to speak to members of
his family when Officer Brown went to Nickerson’s home to search for evidence. 


Additionally,
Nickerson asserts that he was denied food during the interviews.  The record
reflects that before the first interview, Officer Brown gave Nickerson a McDonald’s
meal to eat.  The record is silent, however, as to whether Nickerson either ate
again or requested to eat again.  

Finally,
Nickerson contends that he was sleep deprived while he was at the police
station.  The record, however, reflects Officer Brown knew Nickerson did not
sleep from the time he began to interview Nickerson at 8:44 a.m. until he
placed Nickerson in the city jail at 1:36 p.m.  But Officer Brown did not know
whether Nickerson slept when he was in the city jail between his third and
fourth statements.  

In
the trial court’s findings of fact and conclusions of law, the court found
Nickerson’s statements were voluntary and made “without any threats, improper
influences, any promises, persuasion or compulsion, or any police misconduct of
any kind, and after [Nickerson] knowingly and intelligently waived the presence
of counsel and his right to remain silent.”  The trial court also found that
Nickerson’s confessions were admissible evidence under article 38.22 of the
Texas Code of Criminal Procedure.  After reviewing the evidence and based on
the totality of the circumstances, we agree with the trial court and conclude
the trial court did not abuse its discretion in allowing the statements to be
admitted into evidence because Nickerson made them voluntarily and was given
his statutory warnings before each statement.  Thus, we overrule Nickerson’s second
issue.       

III

Should Felony Murder Have Been Submitted as a Lesser-Included Offense?

            In Nickerson’s third
issue, he contends that the trial court erred by failing to charge the jury on
the lesser-included offense of felony murder.  In response, the State argues that
the evidence introduced at trial did not raise felony murder.  In deciding
whether the jury should have been charged on a lesser-included offense, we
apply a two-prong test.  Segundo v. State, 270 S.W.3d 79, 90 (Tex. Crim.
App. 2008), cert. denied, 130 S. Ct. 53 (2009); see Hall v.
State, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007).  First, we determine if
the offense is a lesser-included offense of the alleged offense.  Salazar v.
State, 284 S.W.3d 874, 875–76 (Tex. Crim. App. 2009); Hall, 225
S.W.3d at 526, 535 (holding the sole test to decide the first step of the
two-prong test is the cognate-pleadings approach, which examines the elements
of the offense and the facts in the charging instrument).  Second, we determine
if there is some evidence in the record “from which a rational jury could
acquit the defendant of the greater offense while convicting him of the lesser
included offense.”  Segundo, 270 S.W.3d at 90–91.  The lesser-included
offense is only an option if the evidence establishes it as a valid, rational
alternative to the charged offense.  Id. at 91 (citing Arevalo v.
State, 943 S.W.2d 887, 889 (Tex. Crim. App. 1997)).  But the Court of
Criminal Appeals has held that anything more than a scintilla of evidence can
be enough to afford the defendant a lesser-included charge.  Hall, 225
S.W.3d at 536.  

            A person commits
the offense of capital murder if he intentionally commits the murder in the
course of committing or attempting to commit a robbery.  Tex. Penal Code Ann. §
19.03(a)(2) (Vernon 2003 & Supp. 2009).  A person commits felony murder if
he “commits or attempts to commit a felony, other than manslaughter, and in the
course of and in the furtherance of the commission or attempt, or in immediate
flight from the commission or attempt, he commits or attempts to commit an act
clearly dangerous to human life that causes the death of an individual.”  Id.
§ 19.02(b)(3) (Vernon 2003).  Intent to kill is the element that differentiates
these two offenses.  Fuentes v. State, 991 S.W.2d 267, 272 (Tex. Crim.
App. 1999).       

            Because it is
well-established that felony murder is a lesser-included offense of capital
murder, and the State concedes this point, the first prong of the test is met. 
See Threadgill v. State, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004).  In
analyzing the second prong of the test, if evidence from any source raises the
issue of a lesser-included offense, then the charge must contain the
lesser-included offense.  Saunders v. State, 840 S.W.2d 390, 391 (Tex.
Crim. App. 1992) (per curiam).  Here, the critical question is whether Nickerson
had the intent only to rob and not the intent to kill.  See Salinas
v. State, 163 S.W.3d 734, 742 (Tex. Crim. App. 2005).  What Nickerson
anticipated before the offense is irrelevant.  See Fuentes, 991 S.W.2d at
273.  “The ‘possibility that initially or at some point during the commission
of the robbery the offender did not have an intent to cause death does not
amount to evidence that the offender did not intend to cause the
[complainant’s] death when the murder was committed.’”  Id. (quoting Rousseau
v. State, 855 S.W.2d 666, 674 (Tex. Crim. App. 1993)).  

In Mathis v. State, the appellant shot three
people, killing two and paralyzing the third.  67 S.W.3d 918, 921 (Tex. Crim.
App. 2002).  The appellant, who had been charged with murder, argued that the
jury charge should have included an instruction on the lesser-included charge
of manslaughter because he acted recklessly with the gun, and he did not intend
to kill anyone.  Id. at 925.  But the court concluded the appellant
“admitted to aiming and firing the gun.”  Id. at 926.  Although the
appellant wanted a lesser-included charge, “[a]part from appellant’s testimony
that he did not intend to kill anyone, there was no other evidence in support
of such theory, and in fact the evidence refuted that testimony.”  Id.  The
court, therefore, held that an instruction on a lesser-included charge of
manslaughter was not appropriate.  Id.  

In Gonzalez v. State, two men entered a
convenience store and demanded money from the store clerk.  296 S.W.3d 620, 624
(Tex. App.—El Paso 2009, pet. ref’d).  After the appellant took the money from
the clerk, the other man fired a shot into the clerk’s chest, killing him.  Id.
at 625.  The two men then fled the scene.  Id. at 626.  The appellant
was charged with capital murder, but he requested an instruction on  the
lesser-included offenses of felony murder or manslaughter.  Id. at 625. 
The appellant argued the gun fired accidentally, and the other man did not
intend to kill the clerk.  Id. at 626.  Even though the videotape of the
robbery may have shown at some point during the commission of the crime the
other man did not intend to kill the clerk, the El Paso court of appeals concluded
that it did not amount to evidence that there was no intent at the time of the
shooting.  Id.  Additionally, the fact that the man shot the clerk and
then fled the scene supported the theory that there was intent to kill.  Id.
at 626–27.  Thus, the trial court correctly refused to instruct the jury on a
lesser-included charge of felony murder or manslaughter.  Id. at 627.   
 

During Nickerson’s four statements to Officer Brown,
he stated:

I had the gun to the back of [the complainant’s] head while
I was searching him.  He was twitching and moving, so I hit him one time, then
after I got the cell phones and money from the two Hispanic males, [the
complainant] got up.  He tussled with me and reached for the gun trying to
snatch the gun out of my hand.  I backed up, he lunged towards me and I shot .
. . I shot once.  Then he came at me again, then he just ran past me and I shot
again.   

Officer
Brown then asked Nickerson, “How many more times did you shoot?”  Nickerson
replied, “Just two, just twice.”  Nickerson also stated that he never had any
intention for the complainant to get shot, his “intention was to put a gun to
[the complainant’s] head and take his belongings.”  Nickerson argues this
statement demonstrates that there was a struggle for the gun and that he did
not intend to kill the complainant.  

            The
State asserts that this statement does not indicate the shooting was
accidental.  In his statement, Nickerson specifically acknowledges that the
complainant did not fall to the ground until the second shot was fired.  The
second shot was fired after the complainant had already lunged for the gun and
was running away from Nickerson.  Lemus testified that the teenager, who was
shooting at the complainant, began to chase the complainant and fired the
second shot, which caused the complainant to fall to the ground.  Lemus stated
that the teenager then walked over to the complainant’s body and shot him in
the head—“a point-blank shot.”  The medical examiner testified that both shots,
to the complainant’s back and head, were fatal wounds.  Even though the
testimony may indicate that Nickerson’s first shot was accidental, the evidence
does not show the second shot to the complainant’s back or the third shot to his
head were accidental, but rather intentional.  

Because
there is not sufficient evidence from which a jury could rationally acquit
Nickerson of capital murder while convicting him of felony murder, the second
prong of the test fails.  Thus, we hold the trial court did not err in refusing
to instruct the jury on the lesser-included charge of felony murder. 
Accordingly, we overrule Nickerson’s third issue.     

IV

Inadmissible Hearsay?

In
his fourth issue, Nickerson complains the trial court erred when it allowed
testimony that one of the complainant’s phones was stolen from the scene to be
admitted into evidence.  He specifically contends that the testimony
constitutes hearsay and is therefore inadmissible.  The State argues that the
statements are not being offered for the truth of the matter asserted and the
evidence was admitted elsewhere during the trial without complaint.  We review
the trial court’s decision to admit the statements using an abuse-of-discretion
standard.  Wall v. State, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006); Angleton
v. State, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998).  Even though a trial court
has substantial discretion, it can abuse its discretion if its rulings are
outside “‘the zone of reasonable disagreement.’”  Salazar v. State, 38
S.W.3d 141, 153–54 (Tex. Crim. App. 2001).  A trial court’s ruling on the
admissibility of evidence will be upheld if the record reasonably supports the
ruling.  Willover, 70 S.W.3d at 845.  

An out-of-court statement offered into evidence to
prove the truth of the matter asserted is hearsay.  Tex. R. Evid. 801(d). 
Hence, a statement not offered to prove the truth of the matter asserted, but
offered for some other reason, is not hearsay.  Guidry v. State, 9
S.W.3d 133, 152 (Tex. Crim. App. 1999); see Dinkins v. State, 894 S.W.2d
330, 347 (Tex. Crim. App. 1995).  The Court of Criminal Appeals has concluded
that if a statement is introduced to explain how a defendant became a suspect
or how the investigation focused on a defendant, then the statement is not
hearsay because it is not offered for the truth of the matter asserted.  Dinkins,
894 S.W.2d at 347 (holding an appointment book and patient application were not
offered for the truth of the matter asserted, but instead the evidence was
offered to show how the appellant became a suspect of the investigation); Jones
v. State, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992), abrogated on other
grounds by Maxwell v. State, 48 S.W.3d 196 (Tex. Crim. App. 2001) (holding
testimony was not hearsay because it was not offered for the truth of the
matter asserted, but to explain how the police officer began to suspect the
appellant, seek an arrest warrant, and finally arrest him); see also Cano v.
State, 3 S.W.3d 99, 110 (Tex. App.—Corpus Christi 1999, pet. ref’d)
(deciding that the testimony was not being offered to prove drugs were
literally being distributed, but rather to show why the officers focused their
investigation on the appellants).  “This type of testimony assists the jury’s
understanding of the events by providing context for the police officer’s
actions.”  Cano, 3 S.W.3d at 110.    

While Officer Huynh was testifying, the prosecutor
asked him about the first break in the case.  Officer Huynh began to testify that
he was instructed to follow up on a phone number that belonged to one of the
complainants.  Nickerson objected, arguing that for Officer Huynh to state who
owned the cell phone would amount to hearsay.  The trial court overruled the
objection, and Officer Huynh testified the stolen phone belonged to one of the
three men who were robbed.  The prosecutor then asked Officer Huynh about the
purpose of inquiring about the phone, and Nickerson lodged another hearsay
objection.  The trial court again overruled the objection, and Officer Huynh
testified the purpose was to be able to track or “ping” the phone to discover
its location.  The phone pings eventually led officers to Nickerson’s home. 
After Nickerson’s mother allowed the officers to enter the home and gave them
permission to speak to Nickerson, the officers discovered Duran’s stolen phone
under Nickerson’s pillow.       

In maintaining that Officer Huynh’s testimony about
the cell phone was improperly admitted, Nickerson relies solely on Morin v.
State, 960 S.W.2d 132, 138 (Tex. App.—Corpus Christi 1997, no pet.).  In Morin,
the court held that “[c]ourts are to discriminate between cases where some
hearsay is allowed to explain the officer’s actions from those cases where such
hearsay is inadmissible based on the degree to which the actions of the police
officer have been challenged by the defendant.”  Id.  But Nickerson’s
reliance on Morin is misplaced.  In that case, the Corpus Christi court
of appeals determined that the officer’s testimony did not even explain how the
appellant became a suspect; the testimony served only to prove the truth of the
matter asserted, and was thus hearsay.  Id.

 If the State elicits testimony to explain how a
defendant originally became a suspect, then the testimony is not hearsay
because it is not for the truth of the matter asserted.  See Dinkins,
894 S.W.2d at 347; Jones, 843 S.W.2d at 499. Our review of the evidence
leads us to conclude that the complained-of testimony established how Nickerson
became a suspect; therefore, it is not hearsay.

Additionally,
the Texas Rules of Appellate Procedure require a party to preserve error for
appellate review by demonstrating the error on the record. Tex. R. App. P.
33.1(a).  The objection must be timely, proper, and specific.  Moff v. State,
131 S.W.3d 485, 489 (Tex. Crim. App. 2005) (explaining how the objection must
be specific unless the particular ground is apparent from the context).  A
party must continue to object every time the inadmissible evidence is offered. 
Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (citing Ethington
v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)).[1]  If the
objection is not continually noted, the error in the admission of evidence will
be cured when the same evidence is admitted elsewhere without objection.  Valle
v. State, 109 S.W.3d 500, 509–10 (Tex. Crim. App. 2003); Ethington,
819 S.W.2d at 858 (citing Hudson v. State, 675 S.W.2d 507, 511 (Tex.
Crim. App. 1984)).  The error, therefore, would be rendered harmless.  Dickson
v. State, 246 S.W.3d 733, 744 (Tex. App.—Houston [14th Dist.] 2007, pet.
ref’d).

            During
Nickerson’s trial, evidence of who owned the stolen phone came in elsewhere
during the trial.  Sergeant Newcomb testified that the phone was important to
the investigation, the phone was taken from one of the complainants, and the
phone was tracked to the Redbud location—Nickerson’s home.  Nickerson never
objected to Sergeant Newcomb’s testimony.  Furthermore, Duran stated at trial
that his phone was stolen, and police officers asked his permission to track
his phone.  Duran also identified the phone in State’s exhibit 101 as his.  Again,
Nickerson never objected to Duran’s testimony about his phone.  Any error that
could have occurred based on the complained-of testimony was cured when the
same evidence was admitted elsewhere without objection.  Accordingly, we
overrule Nickerson’s fourth issue.   

V

Prosecutorial Misconduct?

            In issues five,
six, seven, and eight, Nickerson contends that the prosecutor committed
prosecutorial misconduct when he made statements that were outside the record during
closing arguments.  Additionally, in his ninth issue, he complains that the
trial court erred by denying his motions for mistrial after the prosecutor’s
comments because the cumulative effect of the comments denied him a fair trial
and his right to due process.  The State argues that the comments did not
prejudice Nickerson, and the trial court cured any error with instructions to
disregard the comments.  The State also contends that Nickerson has not
presented evidence that the jury failed to follow the trial court’s
instructions.         

A jury argument is permissible or proper if it fits
into one or more of the following four categories: (1) summation of the
evidence; (2) reasonable deductions from the evidence; (3) answer to argument
of opposing counsel; and (4) pleas for law enforcement.  McFarland v. State,
989 S.W.2d 749, 751 (Tex. Crim. App. 1999); Felder v. State, 848 S.W.2d
85, 94–95 (Tex. Crim. App. 1992).  When the State has departed from one of
these categories during closing argument, and has engaged in conduct calculated
to deny the accused a fair and impartial trial, we should reverse.  Wilson
v. State, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996), abrogated on other
grounds by Motilla v. State, 78 S.W.3d 352 (Tex. Crim. App. 2002).  During
the guilt/innocence phase of the trial, the prosecutor made the following
statements during closing arguments:

Prosecutor:    What
is ironic in this case is the person that could probably most reach Alan
Nickerson . . . is Carltrell Odom.  He knew their desires.  He knew their
struggles, their hardships, what they wanted in life.  And how - -

Defense:        Judge,
I object to that.  That’s outside the record.  There’s no evidence of that
whatsoever.  

            Court:             Sustained.

            Defense:        I’d
ask the jury be instructed to disregard the last comment.

            Court:             Jury
will be instructed to disregard.

Defense:        I move for a mistrial.

Court:             That will be denied.

Prosecutor:    Don’t you know he knew exactly how he
could reach those kids.

Defense:        Judge, again, in light of the Judge’s
ruling, she persists.

Court:             Sustained.

Defense:        I again object.  Ask the jury to be
instructed to disregard.

Court:             Please disregard.

Defense:        Judge, I move for a mistrial.

Court:             Denied.

Prosecutor:    He
worked hard and you can tell he worked hard.  And if you look at him in the
uniform and you think about how it is that he got ready for work and what all
he had to do, to iron his uniform, polish up his badge - -

Defense:        Judge,
again she must have heard a different trial.  I object.  That is outside the
record.

Court:             Sustained.  Let’s move on, Ms.
Barnett.

Defense:        Again,
Judge, I ask the jury be instructed to disregard her last comment.

Court:             Jury will be instructed to
disregard.

Defense:        Move for a mistrial.  

Court:             Denied.  Let’s move along, Ms.
Barnett.

. . .

Prosecutor:    When
Ms. Lewis’ sons grow up, Carl and Kyran, and they have families of their own
and children, they will see the pictures of Carltrell around the house.  And
you know they’re going to ask questions.  Who’s this, Daddy?

Defense:        Judge,
again, I’m going to object.  This is improper argument and it is outside the
record.  It is not proper summation.  It is not within the bounds of proper
jury argument.

            Court:             Sustained.

Defense:        Again,
Judge, I ask the jury be instructed to disregard the prosecutor’s last comment.

Court:             Jury will be instructed to
disregard.

Defense:        Judge, I move for a mistrial.

Court:             Denied.

            We review a trial
court’s ruling on a motion for mistrial using an abuse-of-discretion standard. 
Webb v. State, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); Hawkins v.
State, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004).  We uphold a trial
court’s decision if it was within the zone of reasonable disagreement.  Archie
v. State, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) (citing Wead v.
State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)).  If the prejudice is
not curable, then a mistrial is required.  Archie, 221 S.W.3d at 699. 
But, an improper jury argument may be cured if the trial court gives the jury
an instruction to disregard the prejudicial statements.  See Newby v. State,
252 S.W.3d 431, 438 (Tex. App.—Houston [14th Dist.] 2008, pet. ref’d).  “The
question of whether a mistrial should have been granted when a curative instruction
has been given involves most, if not all, of the same considerations that
attend a harm analysis.”  Id. (citing Hawkins, 135 S.W.3d at
77).  The Court of Criminal Appeals has explained that if constitutional issues
are not involved in a case, then courts should use a three-part analysis to
evaluate whether the trial court abused its discretion in denying a motion for
mistrial based on an improper jury argument.  See Hawkins, 135
S.W.3d at 77; Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App.
1998).  The three-part analysis includes: (1) the severity of the misconduct;
(2) measures adopted to cure the misconduct; and (3) certainty of conviction
absent the misconduct.  Hawkins, 135 S.W.3d at 77; Mosley, 983
S.W.2d at 260; Newby, 252 S.W.3d at 438.  

            In reviewing the
prosecutor’s statements, we must consider the magnitude of the prejudicial
effect of the statement.  See Washington v. State, 16 S.W.3d 70,
74 (Tex. App.—Houston [1st Dist.] 2000, no pet.).  During closing arguments,
the State tried to humanize the complainant with extraneous information.  Although
the prosecutor’s comments were inappropriate and outside the record, the degree
of misconduct was relatively minor and therefore favors a finding of harmless
error.  Second, the record reflects that after the prosecutor’s statements,
Nickerson asked the trial court for a jury instruction to disregard the
statements.  The trial court complied, and promptly instructed the jury to
disregard each statement.  Additionally, Nickerson has not produced any
evidence the jury failed to follow the court’s instructions.  In the absence of
any evidence to the contrary, we presume the jury followed the court’s
instructions.  See Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App.
1999).  Finally, we conclude that Nickerson’s conviction was fairly certain,
regardless of the prosecutor’s inappropriate comments, because he was found in
possession of one of the robbery victim’s stolen cell phones and the jacket 
worn- by the shooter, and he confessed to shooting the complainant during the
course of the robbery.  Accordingly, we hold the trial court did not abuse its
discretion in denying Nickerson’s motions for mistrial, and we overrule his
fifth, sixth, seventh, eighth, and ninth issues on appeal.        

 

*
* *

For the foregoing reasons, we affirm the trial
court’s judgment.

 








 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Yates, Frost,
and Brown.

Publish
— Tex. R. App. P. 47.2(b).









[1]
There are two exceptions to the continual-objection requirement: (1) obtain a
running objection for each witness through whom the evidence is offered, or (2)
request a hearing outside the jury’s presence.  Martinez, 98 S.W.3d at
193.