**Opinion filed April 30, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00101-CR

_____

## CHRISTOPHER JEROME WALDON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR39045**

## M E M O R A N D U M   O P I N I O N

Christopher Jerome Waldon appeals his conviction of possession of a controlled substance.[1]  The jury assessed punishment at confinement for a term of two years.  The trial court sentenced Appellant accordingly.  We affirm.

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (West 2010).

## I. *The Charged Offenses*

Appellant was indicted for one count of possession of a controlled substance—cocaine—in an amount of more than one gram but less than four grams and one count of tampering with evidence.[2] Appellant pleaded "Not guilty" to both counts of the indictment. The jury found Appellant not guilty of tampering with evidence but guilty of possession of a controlled substance.

A person commits the offense of possession of a controlled substance when he "knowingly or intentionally possesses a controlled substance listed in Penalty Group 1, unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice." TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (West 2010). Possession of a controlled substance is a third-degree felony if the controlled substance possessed is, by aggregate weight, including any adulterants or dilutants, more than one gram but less than four grams. *Id.* § 481.115(c). The punishment range for a third-degree felony is not less than two years, or more than ten years, imprisonment. TEX. PENAL CODE ANN. § 12.34(a) (West 2011). In addition, a fine of up to $10,000 may be assessed. *Id.* § 12.34(b).

## II. *Evidence at Trial*

Officer Kyland Wegner testified that on July 25, 2011, at approximately 3:05 a.m., he was dispatched to the intersection of Pleasant Street and Waverly Street in Midland, Texas, to investigate an anonymous report of two people walking through the neighborhood who appeared to be breaking into vehicles. Once he arrived at the scene, Officer Wegner parked his patrol car and searched the neighborhood on foot.

Fifteen minutes after he received the dispatch concerning car burglaries in the area, Officer Wegner noticed a vehicle with its parking lights on, but not its

---

[2]*Id.* § 481.115(a), (c); TEX. PENAL CODE ANN. § 37.09(a) (West Supp. 2013).

2

headlights, parked in the highest auto burglary sector in the city. Officer Wegner watched as a person got into the vehicle and drove off. Believing the driver of the vehicle to be one of the burglary suspects, Officer Wegner got into his patrol car and pursued the vehicle. Officer Wegner eventually stopped the vehicle and found two males inside.

After Officer Wegner had the two men step outside of the car, he identified Appellant as the driver and Merlin Frasier as the passenger. Officer Wegner asked for permission to search the car, which was granted, and he performed a background check on the two suspects, which revealed that Appellant had several outstanding traffic warrants. Officer Wegner arrested Appellant, and Officer Zachary Chesworth then transported Appellant to the Midland County Jail.

Officer Wegner stated that his primary reason for stopping Appellant was reasonable suspicion related to the reported car burglaries. Officer Wegner explained that his suspicion was based on the fact that the driver of the vehicle had been walking around at 3:00 a.m. on a Monday night in a residential neighborhood—behavior which he felt to be suspicious and in line with what the anonymous caller had reported. Officer Wegner noted he believed he was permitted to stop the vehicle because it had been parked illegally.

On the way to the jail, Appellant told Officer Chesworth he felt like he was going to pass out and stated he had cocaine in his underwear. Officer Chesworth then informed Appellant that the jail nurse would evaluate him to determine if he needed further treatment.

As Appellant exited the patrol car at the jail, a small plastic bag containing a white substance, which Officer Chesworth believed to be cocaine, fell out of Appellant's pants and onto the ground. Inside the jail, Officer Chesworth searched

3

Appellant's underwear and found a dollar bill containing a white substance he believed to be cocaine.[3]

Next, the jail nurse examined Appellant, and because Appellant told her he had ingested cocaine, she informed Officer Chesworth that Appellant needed to go to the emergency room. Officer Chesworth then transported Appellant to the local emergency room, where he tested positive for cocaine and was treated for cocaine abuse and overdose.

Dennis Hambrick, a chemist for the Texas Department of Public Safety, testified that he tested the white substance from the plastic bag and from the dollar bill and determined that both substances contained cocaine. Hambrick also stated he weighed the substances and noted that one weighed 0.5 grams and the other weighed 1.2 grams.

Prior to trial, Appellant moved to suppress the evidence because he alleged that the stop that led to his eventual arrest was made without reasonable suspicion or probable cause. Appellant argued the subsequent search was without consent, probable cause, or a warrant. The trial court denied the motion after it heard evidence in the pretrial hearing. Before any testimony at trial, Appellant renewed his motion to suppress and asked for a running objection to the testimony of Officers Wegner and Chesworth, characterizing their testimony as "fruit of the poisonous tree." The trial court overruled the motion but allowed the running objection.

### III. *Issues Presented*

Through seven issues on appeal, Appellant contends that (1) the trial court improperly denied his motion to suppress, (2) the evidence was factually and legally insufficient to sustain his conviction, (3) his due process rights were

---

[3]Officer Chesworth noted that Appellant was searched based on a routine policy that requires all subjects to be searched incident to their arrest.

violated, (4) the State struck at him over the shoulders of his lawyer, (5) the State's closing remarks were improper, (6) the State improperly alluded to his failure to testify, and (7) the State's untruthful remarks during the punishment phase of the trial were improper and inflammatory.

## IV. *Standards of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). We view the record in the light most favorable to the ruling, affording almost total deference to the trial court's ruling on express or implied determination of historical facts and its application of law-to-fact decisions that are supported by the record and turn on an evaluation of witness demeanor and credibility. *Id.* at 25. All other law-to-fact decisions, which includes a trial court's determination of reasonable suspicion and probable cause, are reviewed de novo. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). If the trial court's fact findings are supported by the record, an appellate court is not at liberty to disturb the findings absent an abuse of discretion. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991). The appellate court will address only the question of whether the trial court properly applied the law to the facts. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Mistrial is appropriate for only "highly prejudicial and incurable errors." *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (citing *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)). "The trial court is required to grant a motion for a mistrial only when the improper question is 'clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors.'" *Id.* at 272 (quoting *Wood*, 18 S.W.3d at 648).

We review the sufficiency of the evidence under a single standard because the Texas Court of Criminal Appeals held in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), that there is "no meaningful distinction between the *Jackson v. Virginia*[4] legal-sufficiency standard and the *Clewis*[5] factual-sufficiency standard." *Brooks*, 323 S.W.3d at 902 (footnotes added). The court also held that the *Jackson v. Virginia* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt" and that "[a]ll other cases to the contrary, including *Clewis*, are overruled." *Id.* at 912. We will consider the sufficiency arguments advanced by Appellant under a legal sufficiency review.

In a legal sufficiency challenge, we review all of the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Jackson*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). We defer to the jury's role as the sole judge of the witnesses' credibility and the weight their testimony is afforded. *Brooks*, 323 S.W.3d at 899. The factfinder has the duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We presume the factfinder has resolved conflicting inferences from the evidence in the prosecution's favor, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Each fact need not point directly and independently to

---

[4]*Jackson v. Virginia*, 443 U.S. 307 (1979).

[5]*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

the guilt of the defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13.

## V. *Analysis*

### A. *Motion to Suppress*

Appellant contends in his first issue that the trial court improperly denied his motion to suppress. Appellant argues that the testimony of Officer Wegner and Officer Chesworth should have been suppressed as "fruit of the poisonous tree," given that Officer Wegner stopped him based on mere suspicion.

At the hearing on the motion to suppress, Officer Wegner testified that he stopped Appellant because he had reasonable suspicion that Appellant was involved in the reported car burglaries that Officer Wegner was investigating. It has been an accepted part of state and federal jurisprudence for many years that law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975); *Terry v. Ohio*, 392 U.S. 1 (1968)).

Officer Wegner testified that he found suspicious the presence of people at 3:00 a.m. walking and getting into a parked car that had its parking lights on but not its headlights, which also was parked in an area with the highest rate of car burglaries in the city, fifteen minutes after a call of suspected car burglaries in the area. Officer Wegner had received the call, responded to it, and observed Appellant and the parking violation; he then stopped Appellant.

Officer Wegner asked for identification and permission to search the vehicle, which was granted, and he ran a check for warrants on Appellant. A police officer may do a background or warrant check on a driver that is detained for a valid traffic stop. *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000).

7

Officer Wegner found that Appellant had outstanding traffic warrants and arrested him. Officer Chesworth transported Appellant to jail. The collection of the cocaine evidence that occurred at the jail was part of the jail's custodial procedures.

Officer Wegner also testified that he stopped Appellant because Appellant's vehicle was illegally parked in violation of Midland's municipal code and Section 545.303(a) of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 545.303(a) (West 2011); MIDLAND, TEX. CODE § 10-12-1 (1998).[6] A violation of a municipal traffic code has been held to provide a valid basis for a traffic stop. *Overshown v. State*, 329 S.W.3d 201, 206 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (police had reasonable suspicion to stop car that had parked in a way as to prevent free movement of traffic and had been driving with emergency lights on); *see also Williams v. State*, 726 S.W.2d 99, 100–01 (Tex. Crim. App. 1986) (stop lawful where police officer observed violation of statute requiring parking with right-hand wheels within eighteen inches of right edge of roadway or curb).

Although Officer Wegner testified that his reasonable suspicion that Appellant was involved in the reported car burglaries was the "primary reason" for his stop of Appellant, such testimony does not prevent us from concluding the stop was authorized by Appellant's parking violation. *See Scott v. U.S.*, 436 U.S. 128, 138 (1978) (recognizing "that the fact that [an] officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action)." Because Officer Wegner observed Appellant and had reasonable suspicion that he was involved in criminal

---

[6]Section 545.303(a) of the Texas Transportation Code states that "[a]n operator who stops or parks on a two-way roadway shall do so with the right-hand wheels of the vehicle parallel to and within 18 inches of the right-hand curb or edge of the roadway."

8

activity and because Officer Wegner observed him commit a traffic offense, Officer Wegner's stop of Appellant was lawful. We hold that the trial court properly denied Appellant's motion to suppress. Appellant's first issue is overruled.

### B. Sufficiency of the Evidence

Appellant argues in his second issue that, if the trial court had granted his motion to suppress, there would have been insufficient evidence to support his conviction of possession of a controlled substance. Contrary to Appellant's contention, we must consider all of the evidence—even erroneously admitted evidence—when conducting a sufficiency review. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex Crim. App. 1993). We look at the evidence in the most favorable light to the prosecution to see if a rational juror could have found all of the elements of the offense beyond a reasonable doubt.

Appellant told Officer Chesworth, while Appellant was being taken to jail, that he felt like he was going to pass out and that he had cocaine in his underwear. When Appellant got out of the patrol car, a small plastic bag containing 1.2 grams of cocaine fell out of Appellant's pants and onto the ground. After Appellant was inside the jail, Officer Chesworth searched Appellant's underwear and found a dollar bill containing 0.5 grams of cocaine. We have reviewed the record, and we hold there was sufficient evidence to convict Appellant of possession of more than one gram but less than four grams of cocaine. We overrule Appellant's second issue.

### C. Due Process

Appellant claims in his third issue that his due process rights were violated when Officer Wegner illegally detained him. Again, having already determined Officer Wegner was authorized to stop Appellant based on Appellant's traffic

violation, we do not agree with Appellant's argument that his due process rights were violated by the stop. We overrule Appellant's third issue.

### D. Arguments Made by the State

Appellant's remaining issues, four through seven, challenge arguments made by the State at trial. We address each argument separately.

#### 1. Accusation that defense counsel engaged in "smoke and mirrors"

Appellant argues in his fourth issue that the State improperly "struck at the defendant over the shoulders of his lawyer" by accusing Appellant's trial counsel of engaging in "smoke and mirrors." Appellant claims the State's comment was calculated to embarrass Appellant's trial counsel and cause Appellant great damage by suggesting his attorney was acting improperly.

During cross-examination of Hambrick, Appellant's counsel asked questions about the purity of the cocaine that Hambrick identified in the substances he tested. The State objected to the line of questioning as irrelevant "smoke and mirrors." Appellant then objected and accused the State of "striking at the Defendant over the shoulder of his lawyer." The court sustained the State's objection and found the line of questioning to be irrelevant. The court did not rule on Appellant's objection. Because Appellant did not pursue an adverse ruling on his objection, he has not preserved this issue for review. *See Haley v. State*, 173 S.W.3d 510, 516 (Tex. Crim. App. 2005) (recognizing that, to preserve error for appellate review, an objection must be timely, specific, and pursued to an adverse ruling). Appellant's fourth issue is overruled.

#### 2. "The evidence is what it is, and the facts and the law are on the State's side"

Appellant argues in his fifth issue that several of the State's closing arguments were improper. Appellant contends that the trial court erred each time it denied a motion for mistrial that was based on one of the challenged arguments.

10

Appellant initially complains that the State improperly made the following closing argument: "The evidence is what it is, and the facts and the law are on the State's side." Appellant promptly objected to the argument, and the objection was sustained. The trial court also instructed the jury to disregard the argument. Appellant then requested a mistrial, but the request was denied.

Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). Even when an argument exceeds the permissible bounds of these approved areas, it is not reversible unless the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts harmful to the accused. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

Generally, instructions to the jury are sufficient to cure most improprieties that occur during trial, and we presume that a jury will follow the judge's instructions. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). A mistrial is an appropriate remedy only in extreme circumstances and is reserved for a narrow class of highly prejudicial and incurable errors. *Hawkins*, 135 S.W.3d at 77. If the harm caused by an improper jury argument is incurable, a motion for mistrial preserves error for appellate review. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007); *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004). However, to preserve error, a motion for mistrial must be timely. *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). A motion for mistrial is timely only if it is made when the grounds for it become apparent. *Id.*

Appellant preserved for appeal his complaint on improper jury argument, and we understand his concern with the State's comment, which was not artfully phrased. But we disagree that the comment was improper because one could

11

reasonably infer that the State had argued a deduction of the evidence that the Appellant was guilty of the charged offense. The State's argument also did not violate a mandatory statute or inject new facts into the trial and could not be labeled "extreme" or "manifestly improper." We hold that the comment was proper, but even if it was improper, any harm caused by the comment was cured by the instruction given to the jury after the trial court sustained Appellant's objection. We hold that the trial court did not act outside the zone of reasonable disagreement when it denied Appellant's request for a mistrial based on this argument by the State.

### 3. "I don't like sending good-looking young Defendants to either probation department or the pen"

Appellant next complains that the State made an improper remark during its closing argument at the guilt/innocence phase of the trial when the prosecutor stated he did not like "sending good-looking young Defendants to either probation department or the pen." Appellant objected to the comment, and the trial court sustained the objection. The trial court also instructed the jury to disregard the comment. Appellant then requested a mistrial, but the request was denied.

As a general rule, punishment may not be discussed by either side at the guilt/innocence phase of the trial. *Garcia v. State*, 887 S.W.2d 862, 877 (Tex. Crim. App. 1994). During the first phase of the trial, the jury is limited to determining if the defendant committed an offense. If the defendant is convicted, the second phase of the trial deals with the punishment available for that conviction. The issue of punishment was only mentioned fleetingly, and the State did not bring the issue up again after the trial court sustained the objection and gave the instruction to disregard. Although we agree the prosecutor's remark was improper, we find this isolated remark was not so inflammatory that any harm caused by it was not cured by the instruction to disregard. We hold that the trial

12

court did not act outside the zone of reasonable disagreement when it denied Appellant's request for a mistrial based on the isolated remark.

### 4. "[T]he only just result is guilty on tampering and guilty on possession, because that's what the evidence shows"

Appellant further contends that the State improperly made the following closing argument: "[T]he only just result is guilty on tampering and guilty on possession, because that's what the evidence shows." Appellant objected to the argument, but the trial court overruled the objection. Appellant claims in his brief he requested a mistrial at this time, but the record does not reflect his request. But Appellant did not have to request a mistrial because he received an adverse ruling on his objection. *See McFarland v. State*, 989 S.W.2d 749, 750–51 (Tex. Crim. App. 1999) (addressing "second" argument to which objection was overruled, but holding that first, third, and fourth arguments were not preserved where the objection was sustained but not pursued to adverse ruling). We now address the merits of whether the argument was improper and should have been sustained and, if so, whether Appellant suffered harm.

Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Cannady*, 11 S.W.3d at 213. If an argument exceeds these four areas, it is error, but it is not reversible unless the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts harmful to the accused. *Wesbrook*, 29 S.W.3d at 115. If a party makes an improper jury argument and the court sustains the objection and provides a curative instruction, we assume the jury will follow the court's instructions. *Gamboa*, 296 S.W.3d at 580. If a defendant believes that the curative instruction is insufficient to prevent harm, he must move

for a mistrial in order to preserve error for appellate review. *Cruz*, 225 S.W.3d at 548; *Young*, 137 S.W.3d at 70.

Appellant's argument is that the comment—"'[T]he only just result is guilty on tampering and guilty on possession, because that's what the evidence shows'"—is outside the four areas of permissible jury argument and that he was harmed. We disagree because the comment was both a response to opposing counsel and a plea for law enforcement.

The State presented evidence that Appellant, while he was being transported to jail, told police officers that he had drugs in his underwear; the analysis of the substances in Appellant's possession, including the substance that fell out of his pants as he exited the patrol car, revealed that the substances contained cocaine. Officer Chesworth also testified that Appellant said, on the way to jail, that he thought he was going to pass out and that Appellant told the jail nurse that he had ingested cocaine. Appellant was transported to the hospital where he tested positive for cocaine and was treated for cocaine abuse and overdose. The State referred to this evidence in summation. The State's comment—"[T]he only just result is guilty on tampering and guilty on possession, because that's what the evidence shows"—was a request for a guilty verdict based on this evidence, and the "just result" reflected a plea for law enforcement. We hold that the trial court did not act outside the zone of reasonable disagreement when it overruled Appellant's objection. And because there was no error, we need not conduct a harm analysis.

### 5. Summation of Testimony

Appellant next complains that the State mischaracterized the evidence regarding what Officer Wegner and Officer Chesworth witnessed on the night of Appellant's arrest. Appellant contends that the State misstated the evidence when it suggested that the officers witnessed "some guys sitting on the side of the road to

14

light a cigarette." Appellant objected to the statement and asked for a curative instruction. The trial court overruled the objection and instructed the jury that the lawyers' arguments were not evidence.

Appellant also complains that the State misstated the evidence when it claimed there was "no evidence as to what kind of warrants" Appellant had out against him at the time of his arrest. Appellant objected to the statement. The trial court overruled the objection and reminded the jury that the lawyers' arguments were not evidence. Because Appellant received an adverse ruling on his objection, he preserved error for review.

The State's comments about the police officers' testimony of what Appellant was doing when first observed and about the substance of the warrants were not an accurate summation of the evidence. Officer Wegner testified that he noticed a vehicle with its parking lights on and watched as a person got into the vehicle and drove off. Officer Wegner also testified that Appellant had several outstanding traffic warrants. However, we assume that the jury followed the trial court's instruction when the trial court instructed the jury that what the lawyers say in closing argument is not evidence. *Gamboa*, 296 S.W.3d at 580. We hold that the isolated remark by the State did not introduce new facts harmful to the accused or make an argument that was manifestly improper or extreme. We hold that Appellant was not harmed by this single erroneous comment. Appellant's fifth issue is overruled

### 6. *"We are spending time here now because he doesn't want to be held accountable"*

Appellant contends in Issue Six that a mistrial should have been granted after the State improperly commented on Appellant's failure to testify—by stating that Appellant didn't "want to be held accountable." Although Appellant claims the comment was made during both the guilt/innocence phase and the punishment

phase, the record shows that the complained-of comment was only made during guilt/innocence.

During its closing argument, the State argued that Appellant had wasted the police department's time by forcing Officer Chesworth to wait at the emergency room while Appellant received treatment for a cocaine overdose. Referring to Appellant, the State said, "[W]e are spending time here now because he doesn't want to be held accountable."

Appellant objected to the argument as a comment on the defendant's failure to testify, and the State responded that the comment was not intended as such. Appellant then asked for a curative instruction and a mistrial. The trial court overruled Appellant's objection and denied both of his requests.

The State cannot comment on a defendant's failure to testify; such a comment violates the privilege against self-incrimination and the freedom from compulsion to testify. *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). To determine whether a comment constitutes an impermissible reference to a defendant's failure to testify, a court of appeals must decide whether the language used was manifestly intended to be or was of such a character that the jury naturally and necessarily would have considered it to be a comment on the defendant's failure to testify. *Id.* at 765. The language complained of must be viewed from the jury's standpoint, and the implication that the comment referred to the defendant's failure to testify must be clear. *Id.* A mere indirect or implied allusion to the defendant's failure to testify does not violate the defendant's right to remain silent. *Id.*

In this case, the State's comment was neither a summation of the evidence nor a deduction from the evidence. *Coble v. State*, 871 S.W.2d 192, 205 (Tex. Crim. App. 1993). The comment that Appellant does not "want to be held accountable" does not ask a rhetorical question or implicate an answer that only the

16

Appellant could provide. In fact, the comment is more like comments made by the State in *MacIntosh v. State*, where the court held that the State did not comment on the defendant's failure to testify when it said that the defendant "wants to stand here before you and say that he didn't do it" and that the defendant "is not taking responsibility" for the offense. *MacIntosh v. State,* No. 02-13-00059-CR, 2014 WL 1087926, at *6 (Tex. App.—Fort Worth March 20, 2014, no pet. h.) (mem. op., not designated for publication). The State's comment in Appellant's case was similar and was not a direct comment on his failure to testify.

But even if the comment was improper, which we do not hold, the trial court did not abuse its discretion when it denied Appellant's motion for mistrial. "To evaluate whether the trial court abused its discretion in denying a mistrial for improper jury argument, this Court, in *Hawkins v. State*,[7] adopted the three factors from *Mosley v. State*[8] which balance: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction).[9]" *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011).

In *Archie*, the prosecutor made improper references to a "kite"[10] written by the defendant in a murder case; the prosecutor also turned and pointed to the defendant to ask him improper rhetorical questions about his presence at the murder scene. *Archie*, 340 S.W.3d at 737–38. Defense counsel objected. The trial

---

[7]*Hawkins*, 135 S.W.3d at 76–77.

[8]*Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998).

[9]*Id.*; *Julius Archie v. State*, 221 S.W.3d 695 (Tex. Crim. App. 2007).

[10]"Kite" is a letter that is written in jail. *Archie*, 340 S.W.3d at 737.

court sustained the objections, instructed the jury to disregard, instructed the prosecutor not to repeat his comments or questions, but denied the request for a mistrial. *Id.* at 737–38. The Waco Court of Appeals reversed the conviction after it determined that two of the comments were improper and were not cured by the trial court's instructions and that the trial court should have granted a mistrial. *Id.* at 738. The State appealed, and the Court of Criminal Appeals held that, although two of the questions were improper comments on the defendant's failure to testify, the appellate court erred in its analysis of the *Mosley* factors. The Court of Criminal Appeals held that the trial court did not abuse its discretion when it denied the request for a mistrial. *Id.* at 739–42.

In this case, *Mosley* factors one and two would weigh against the State. But as we have previously explained, there was overwhelming evidence of Appellant's guilt. Appellant would have been convicted even if the prosecutor had not made the comment. Having found that the State made no argument during the guilt/innocence phase that warranted a mistrial, we overrule Appellant's sixth issue.

### 7. "Drug dealers, gang members, gross misallocation of vital resources due to that guy over there"

Appellant claims in his final issue that the State made an unfounded and inflammatory claim during the punishment phase of the trial when it referred to Appellant as a "drug dealer." Appellant further argues that a mistrial should have been granted in response to the comment.

Referring to Appellant, the State made the following comment during its closing argument at punishment: "Drug dealers, gang members, gross misallocation of vital resources due to that guy over there."[11] Appellant objected

---

[11]The comment was based on the testimony of Matthew Nichols, Appellant's correctional officer at the time of trial. Nichols claimed that Appellant admitted to him that Appellant was a gang member and that Appellant showed him the Hoover Crip gang sign when he asked Appellant what sign his gang

to the comment and asked for a mistrial. The trial court sustained the objection but denied the request for a mistrial. The trial court also instructed the jury to disregard "the comment about being a drug dealer."

We find that the State did not directly argue to the jury that Appellant was a drug dealer. Even if we construed the comment as such a reference, which we do not, we find that whatever harm may have been caused by the comment was cured by the instruction given to the jury. *See Soto v. State*, 810 S.W.2d 861, 864 (Tex. App.—Fort Worth 1991, pet. ref'd) (finding that, because the State did not directly refer to the defendant as a "drug dealer," any error resulting from the argument was cured by the trial court's instruction to disregard). We hold that the trial court did not abuse its discretion when it refused to grant a mistrial in response to the State's comment. Appellant's final issue is overruled.

VI. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


April 30, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

---

FOOTNOTE NO. 11 CONTINUED:

used. Nichols further explained that he believed Appellant was a member of the Five Deuce Hoover Crips gang, a group known to manufacture and deal drugs. Appellant testified that he had never been in a gang and denied telling Nichols that he was a gang member or showing him any gang signs. Appellant claimed that he knew a lot of gang signs because he had several friends who were affiliated with gangs.